## J. WAGNER ET AL. v. DWELLING-HOUSE INS. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF BRADFORD COUNTY.

Argued March 16, 1891—Decided October 5, 1891.

[To be reported.]

1. Where an insurance company, after notice and the receipt of proofs of a loss, adjusted and compromised the claim therefor, and promised to pay a sum certain in liquidation of it, the company, in an action to recover the sum promised, cannot set up as a defence the breach by the insured of conditions contained in the policy.

(a) In assumpsit against an insurance company, plaintiffs declared upon a compromise and settlement of the amount claimed upon a loss, with a

Statement of Facts.

promise to pay the sum agreed upon at a time certain, in full satisfaction of the claim, the settlement and promise being made by the company's adjusting agent, after the receipt of proofs of loss by the company.

(*b*) The policy contained the usual conditions as to title and encumbrances, as to the time after a loss when the insurance should become payable, and against waivers of any of the provisions of the policy, except in express terms and in writing signed by the president or secretary of the company:

2. It was not error to admit in evidence proofs of loss and amended proofs, submitted before the alleged adjustment, for the purpose of showing that the defendant company had notice of what property was lost, and the amount claimed therefor, followed by evidence of the alleged compromise and adjustment.

3. The controlling issue was one of fact, to wit, whether the plaintiffs' claim was compromised and payment thereof promised, as averred. That question being fairly submitted to the jury upon sufficient evidence, the verdict for the plaintiffs was conclusive against the defendant, as to every ground of defence based upon conditions in the policy.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

No. 67 July Term 1890, Sup. Ct.; court below, No. 895 May Term 1889, C. P.

On April 29, 1889, J. & W. Wagner brought assumpsit against the Dwelling-house Insurance Company of Boston, filing a statement of claim averring in substance as follows:

That on November 10, 1885, the defendant company issued a policy of insurance insuring the plaintiffs against loss or damage by fire or lightning to the amount of $3,950 on certain property specified as set forth therein, for the period of three years, a copy of said policy being annexed to the statement; that on October 30, 1888, a fire occurred, and said plaintiffs' dwelling-house and family wearing apparel and family provisions therein were destroyed, and by reason thereof said plaintiffs suffered a loss and damage to the amount of $1,638.21; that defendant was immediately notified of said loss, and such proofs of loss as were deemed necessary were made out and delivered to defendant on November 20, 1888; that on December 2, 1888, plaintiffs received a notice from defendant stating certain matters (set forth in the statement) wherein it was alleged that the proofs of loss were insufficient; that, upon the request

Statement of Facts.

of plaintiffs, the defendant returned said proofs, and on December 13, 1888, amended proofs of loss were delivered to said defendant, at its branch office in Towanda, Pa., and the same day were forwarded to the defendant at Boston, with notice that "any other information that may be required will be furnished on call and considered a part of these proofs;" that "no other or further complaint was made, nor information asked by said defendant from said plaintiffs, in relation to the circumstances of the fire aforesaid, or the loss and damage thereby suffered; but, on or about the first day of February, 1889, said defendant, by its duly authorized agent, W. M. Melchert, came to and upon the premises in the township of Franklin, Bradford county, Pa., where said fire occurred, and where the loss and damage to said plaintiffs was suffered, and then and there compromised, adjusted and settled with said plaintiffs their claim of $1,638.21 for the sum of $1,520.10, under an agreement with said plaintiffs that said sum should be paid them by defendant within a week or ten days thereafter, in full satisfaction of their claim for their loss and damage aforesaid. Yet said defendant, disregarding," etc.

The defendant company filed an affidavit of defence admitting the issuance of the policy, the receipt of the first proofs of loss and the return thereof, and the receipt of the amended proofs, wherein the sum claimed from the defendants was $1,638.21; but denying that no other or further complaint was made or information asked for by it relative to the loss or damage claimed to have been suffered by said fire; averring, on the contrary, that "on February 20, 1889, another proof of loss was asked for by it through its agent, W. M. Melchert, and one was executed and given by said plaintiffs to said agent, wherein the amount of said plaintiffs' claim as set forth was $1,520.10," and said proofs of loss was delivered to defendant; that plaintiffs thus admitted that the amount as claimed by them in their first proofs of loss was false; that defendant did not object to the proofs of loss last mentioned, but alleged that said proofs were not furnished in season, as required by the terms and conditions of the policy, and denied that said W. M. Melchert, in behalf of the defendant or himself, compromised and adjusted the plaintiffs' loss as set forth in their statement of claim; and averred, further, that as the plaintiffs'

loss was not payable, under the terms of the policy, for ninety days after the final proofs of loss were received, to wit, May 21, 1889, the plaintiffs' suit was brought prematurely.

At the trial, on April 7, 1890, the plaintiffs offered the first proofs of loss, the letter from the defendant to them in reply pointing out the defects, and the amended proofs, for the purpose of showing that the defendant had notice of what property was lost and the amount claimed therefor; this to be followed by evidence showing the value of the property lost.

Objected to.

By the court: Offer admitted; exception.[1]

John Wagner, called on behalf of the plaintiffs, testified to the making and sending of the first and amended proofs of loss, and to the visit of the defendant's adjusting agent on February 20, 1889:

" Q. State everything that he did? A. He sat right down and figured, and made that offer. That was the only offer he made, $1,520.10. Q. Did you accept the offer right away? A. No, sir, I didn't. Q. How long was he there? A. Oh, I don't know. He might have been there a couple of hours. Q. Did he talk German to you? A. Yes, sir, he did. Q. Did he tell you where he was from? A. He told me where he was from, and I told him where I was from. Q. When did you finally agree to accept the $1,520.10? A. Well, he had his horse before the house, ready to start, and I hadn't talked with him yet about it, at all, that I would take that, and my brother said to me, ' We had better take it than to have a lawsuit about it.' And I said, ' Well, I don't know but we had.' And we went to the house, and he had a paper there and he had us sign it. Q. He had you sign a paper? A. Yes, we had to sign a paper. Q. Did you sign the paper before, or after you had agreed to take the $1,500? A. Just before he started away. Q. Had you consented to take the $1,520.10 before you signed the paper? A. Well, I don't understand you right. Q. Had you agreed with him that you would take the $1,520.10? A. Yes, sir. Q. Was that agreed to before you signed the paper? A. Yes, sir. Q. Did he tell you when you would receive your money? "

Mr. Mercur: " We object, that by the terms of the policy of insurance, the company are allowed ninety days to pay,

Statement of Facts.

after the receipt of satisfactory proofs of loss; that the agent had no power to waive any conditions of the policy as to the time of payment, and that if he stated to the insured that it would be paid within a month or ten or twenty days, it was not binding."

By the court: " We think that an adjuster might have power to agree that it should be paid at once, as one of the inducements to reduce the amount to be paid, and as a part of the terms of compromise. Objection overruled;" exception.[2]

Mr. Wood: " Q. When did he say you would get your money? A. He told me in two weeks. Just as quick as he could get home, he said. He said that would be about two weeks. Q. But the money didn't come? A. No, sir."

Further testimony was adduced, as shown in the opinion of the Supreme Court.

The policy of insurance put in evidence contained the following conditions :

" The amount of loss or damage to be estimated according to the actual cash value of the property at the time of the loss, and to be paid ninety days after notice and due and satisfactory proofs of the same shall have been made by the assured and received at the company's home office at Boston, Mass., in accordance with the terms and provisions of this policy hereinafter named."

There was also the usual condition as to title and against encumbrances, and the following :

" No act or omission of the company or any act of its officers or agents shall be deemed, construed or held to be a waiver of a full and strict compliance with the foregoing provisions of the terms and conditions of this policy, nor an extension of time to the assured for compliance, except it be a waiver or extension in express terms, and in writing signed by the president or secretary of the company."

The statement, or proofs of loss, as claimed by the defendant, furnished February 20, 1889, contained the following provisions:

" And in consideration of this proof of loss and the amount awarded therein, we waive all claims made heretofore of above company, and all former proofs made by us are null and void."

" Any other information that may be required will be furnished on call, and considered a portion of these proofs."

Charge of Court below.

"It is expressly understood and agreed that the furnishing of this Proof-of-Loss blank to the assured, or making up of proofs by an adjuster, or any agent of the company or companies named herein, is not a waiver of any rights of said company."

At the close of the testimony, the court, SEELY, P. J., charged the jury as follows:

This is an action brought upon an insurance policy. No controversy exists but that the defendant agreed, on the tenth day of November, 1885, to insure the property of the plaintiffs for the term of three years. The policy is in evidence. This policy contains certain conditions and stipulations with reference to notice to the insurer of encumbrances that may be against the property, and requirements with reference to notice, and proofs of loss. The dwelling-house and certain personal property were destroyed by fire on the thirtieth day of October, 1888. The defendants admit by their affidavit of defence that notice of this loss was given to them. Within a few days after the fire, the defendants received from the plaintiffs what they, the plaintiffs, called their proofs of loss. The company notified the plaintiffs that they were insufficient, and declined to recognize them, and called attention to the respects in which they were insufficient. The plaintiffs wrote for these proofs, and they were returned to them, and finally, on the thirteenth of December, 1888, additional proofs were sent. These proofs were received by the defendants. They made no further communication to the plaintiffs with reference to the proofs, but retained them in their possession. [Subsequently, in February, they directed their agent to come on here for the purpose of settling this loss. He went upon the premises, had an interview with the plaintiffs, and after some discussion they agreed upon the sum of $1,520.10. The plaintiffs say that this was a compromise. They say that the defendants' agent came there, saying that he came for the purpose of compromising their claim. Judge Russell, when he is called upon the stand, testifies as to his conversation with the agent of the defendants, and also uses the word " compromise " as the one that was used in this connection. And another witness, F. E. Jayne, who was present at this interview with Judge Russell, also uses

Charge of Court below.

the word " compromise " in speaking of it.   The agent himself
says that he went there for the purpose of adjusting the loss,
and that he adjusted it at the sum of $1,520.10.] [3]

[They certainly had a right to accept these proofs of loss as
sufficient, and to act upon them and adjust the loss.   After
having received and retained these papers, when they sent
their agent, in the middle of February, to meet these plaintiffs
and adjust this loss, and to agree upon the amount that should
be paid to the plaintiffs, it was an acceptance of the former
proofs of loss as a sufficient compliance with the conditions of
the contract.] [4]   [If this was a compromise of the claim in-
controversy between these parties, and the agent had authority
to make such a compromise, as a part of that compromise he
had the authority to agree that the money should be paid
promptly.   It might be one of the considerations for the abate-
ment from the amount claimed upon the policy, that prompt
payment should be made of the amount agreed upon.   And if,
in the exercise of this authority, they came together and agreed
upon the terms of compromise and the amount that should be
paid, and when it should be paid, and that transaction was
ended in that respect, it could not be defeated by the subsequent
signing of a paper, unless it was a clear relinquishment of the
plaintiffs' claim that had already been established and agreed
upon.   Did the agent of the defendants, under their directions,
on the twentieth of February, come there to see the plaintiffs,
and to adjust their loss?   Did he meet these plaintiffs, and
did they then agree upon a sum which was to be paid in satis-
faction of this loss, and did the agent of the defendants agree
that it should be paid promptly?   If they accepted the former
proofs of loss as sufficient for their action in adjusting this loss,
we do not think that after it was all over, new proofs of loss
could be taken to defeat the rights of the plaintiffs.] [5]

The position of the defendants is this.   The policy contains
a provision that no action can be maintained unless brought
within six months of the date of the loss.   That would take it
to the thirtieth or thirty-first of April, 1889.   If the defend-
ants' theory is correct about this proof of loss that was signed
on the twentieth of February, an action could not be brought
until ninety days after the twentieth of February, which would
be about the twentieth of May.   So that the plaintiffs could

not maintain an action brought after the thirtieth of April, and they could not maintain an action brought before the twentieth of May. If the claim of the defendants in this respect is true, the plaintiffs could not maintain any action at all, but this last paper which they call a proof of loss is an absolute bar to any action that could be brought by the plaintiffs. We do not think that it can be so considered. We do not think that under the circumstances, if the matter admits reasonably and fairly of another construction, it should be so considered. We think you have a right to inquire whether the paper called proofs of loss, signed on the twentieth of February, was not rather a paper drawn for the purpose of making the assertion of the plaintiffs agree with the act of the defendant in respect to the abatement; that is, to make the proofs of loss agree with the amount of the claim as adjusted, and whether this was not the sole and only purpose of the paper at that time. If such was the fact, we do not think that this action is prematurely brought. We do not think that the plaintiffs are placed in a position where they have absolutely waived all right to recover, or to maintain any action whatever against the defendants.

The counsel for defendants has submitted certain points in writing, asking us to instruct you :

1. That by the terms of the policy, the defendant company was not required to pay the loss until ninety days after notice and due and satisfactory proofs of the same shall have been made by the assured and received at the company's home office, at Boston, Mass., in accordance with the terms and provisions of this policy; and, as satisfactory proofs of loss were not made until the twentieth of February, 1889, and suit was brought on the twenty-ninth day of April, 1889, the right of action had not then accrued to the plaintiffs, and the verdict must be for the defendant.

Answer: We refuse to affirm this point. While the proposition of law is generally correct, the proposition of fact, in the latter part of this point, we cannot affirm. This proof of loss was not in existence, at all, at the time of the adjustment, according to the testimony of the witnesses, but was something that was signed after the parties had consummated their agreement of settlement. The only proofs of loss existing at the time this agreement was made were the proofs that were made

Charge of Court below.

in December and November, and three months had expired since the filing of those proofs before this action was brought. It is true that in this last paper there is an agreement or stipulation that all former claims are waived and treated as null and void. It may be true that after an agreement had been effected by which the amount to be paid and the time when it should be paid had been determined, that they did so agree. They then might waive all the terms of their former claim, and incorporate that claim into a new paper, if they chose.[6]

2. The condition not to encumber the property insured was broken by the entry of the judgment of $200, February 2, 1888, confessed by the plaintiffs in favor of Sarah F. Lantz, to No. 540 February Term 1888; and if the jury believe the plaintiffs failed to notify the company and obtain their consent to the continuance of the policy, the policy was therefore void, and the plaintiffs cannot recover.

Answer: That would be true as a proposition of law, if it were not for this settlement that is alleged to have been made in February. But, in the proofs of loss which had been furnished, the amount of encumbrances was stated. And after notice had been given to the company that encumbrances to the amount of $3,500 existed upon this property, if they chose then to come in and make a settlement of this matter with the plaintiffs, they had a perfect right to do so. They had a perfect right to waive this clause in the policy, and might become liable to pay any sum which they agreed upon.[7]

3. The condition not to encumber the property insured was again broken by the entry of the judgment of $160, May 15, 1888, confessed by the plaintiffs in favor of P. L. Ward, to No. 78 September Term 1888; and if the jury believe the plaintiffs failed to notify the company and obtain their consent to the continuation of the policy, the policy was therefore void, and the plaintiffs cannot recover.

Answer: We make the same answer to this that we did to the former point.[8]

4. That the alleged representations made by the agent of the defendant company were at any rate not the assertion of any fact past or present, but only a promise as to the future; and the insured had no right to repose any confidence in such a promise, because there was by the terms of the policy an

express exclusion of any such authority on the part of the agent to make it. If he had had sufficient authority to bind the company, his declarations would not have been sufficient to constitute an estoppel.

Answer: The matter here is very different from that presented in the authorities that were read. It is alleged by the plaintiffs here that there was an agreement by which they conceded certain things and the defendant agreed to certain things, so that one might be the consideration for the other. If they came to an agreement for mutual considerations, and sufficient considerations, by which this agent, acting for the company at that time, undertook to pay a certain sum to these plaintiffs, in consideration of their waiver of a claim to a larger sum, and agreed to pay it within a certain time, then we think the company should be called upon to respond to that agreement.[9]

—The jury returned a verdict for the plaintiffs for $1,620.42. Judgment having been entered, the defendant took this appeal and assigned for error:

1, 2. The admission of the plaintiffs' offers.[1] [2]

3–5. The portions of the charge embraced in [ ] [3 to 5]

6–9. The answers to the defendant's points.[6 to 9]

*Mr. Rodney A. Mercur* and *Mr. C. Stuart Patterson*, for the appellant:

1. Ever since the early case of Thurston v. Murray, 3 Binn. 326, it has always been held in this state that the insured cannot avail himself of his own statements to prove his own loss, or the particulars of it; nor is there anything in the policy itself to vary the common-law rule of evidence on this point. The insured cannot make evidence for himself; otherwise, the insurer would be entirely at the mercy of an unscrupulous man who might easily double the actual amount of his loss. Commonwealth Ins. Co. v. Sennett, 41 Pa. 161, is very similar to the present one. In that case, the court below permitted the schedule, statements, and affidavits of the plaintiffs, relative to their loss, to be read, not only to prove compliance with the conditions of the policy as to preliminary proofs, but as prima facie evidence of the goods lost, as to quality and quantity, but not as to value; Held, to be error; for, there being nothing in

the policy making these papers evidence per se, they were not evidence of the goods lost, and should not have been read to the jury. This case was followed by Lycoming Ins. Co. v. Schreffler, 42 Pa. 188; Kittanning Ins. Co. v. O'Neill, 110 Pa. 548; Peoples' Ass'n v. Smith, 126 Pa. 317.

2. What is the effect of an adjustment? The fact that the loss has been adjusted by the insurers, does not necessarily entitle the assured to recover that amount. The adjustment of itself merely amounts to an admission, on the part of the insurer, that the sum fixed is due if the insured is entitled to have anything under the policy, and does not estop the insurer from setting up fraud on the part of the assured, or a breach of any of the conditions of the policy that operates to defeat the insurer's liability: Wood on Fire Insurance, § 456. To the same effect are Whipple v. Insurance Co., 5 Ins. L. J. 71; Herbert v. Champion, 1 Camp. 134; Gammon v. Beverley, 8 Taunt. 119; Matthews v. Insurance Co., 9 La. Ann. 590; Russell v. Dunskey, 6 Moore 233. Moreover, to create a waiver, the conditions of the policy required it to be "in writing signed by the president or secretary of the company." It is not pretended that either the president or secretary agreed or asserted that the policy would be paid in two weeks. The utmost that is asserted, is that the agent who adjusted the loss made such a statement; and such statements are absolutely nugatory and should not have been admitted: Waynesboro Ins. Co. v. Conover, 98 Pa. 384; Pottsville Ins. Co. v. Improvement Co., 100 Pa. 137; Universal Ins. Co. v. Weiss, 106 Pa. 20.

3. The learned court did not fairly submit the effect of the proofs of loss of February 20, 1889, to the jury. When the plaintiffs gave that statement to the defendant, they expressly stipulated that "all former proofs made by us are null and void." There were therefore no other proofs in existence. By the terms of the policy, the defendant was not required to pay the amount agreed upon until ninety days thereafter; the suit was therefore brought prematurely, and cannot be maintained: Camberling v. McCall, 2 Y. 281; German Amer. Ins. Co. v. Hocking, 115 Pa. 398; Commercial Ass'e Co. v. Hocking, 115 Pa. 407; Howard Ins. Co. v. Hocking, 115 Pa. 415; Hocking v. Insurance Co., 130 Pa. 170. Moreover, the authorities all hold that a condition not to encumber the insured property is

broken by the entry of judgments after the policy was written, without the consent of the defendant first had and obtained: Brown v. Insurance Co., 41 Pa. 187; Penna. Ins. Co. v. Gottsman, 48 Pa. 151; Kensington N. Bank v. Yerkes, 86 Pa. 227; Seybert v. Insurance Co., 103 Pa. 282; Nassauer v. Insurance Co., 109 Pa. 507; Penna. Ins. Co. v. Schmidt, 119 Pa. 449; Hench v. Insurance Co., 122 Pa. 128.

*Mr. Wm. Maxwell*, for the appellees:

1. The main and about the only contested matter in this case, in the court below, was that relating to the question of compromise. No specific form is requisite to an adjustment. To render it binding it must be intended and understood by the parties to a policy to be absolute and final. An insurance company is bound by the acts of its adjuster, and by all that he does in relation to the adjustment and settlement of a loss, so far as he acts within the scope of his authority or employment, or apparent authority. Apparent authority seems to be the test. " The same rules apply to insurance companies as apply in the case of individuals, and a person who is clothed with power to act for them at all, is treated as clothed with authority to bind them as to all matters within the scope of his real or apparent authority. . . . . It is enough if the act is within the scope of the apparent power: " Wood on Fire Insurance, 2d ed., § 408. And " when an insurance company, after a loss, has adjusted the claim therefor, and has agreed to pay a certain sum in liquidation of the claim, it cannot, in an action setting forth such facts, object that the action was not brought within the time limited in the policy: " Wood on Fire Insurance, 2d ed., 450.

2. If the loss is adjusted at a less sum than the property was insured for; or, in other words, if there was a compromise and a promise, there is a consideration for the promise, and the company is concluded from setting up any breach of the conditions of the policy by the insured in defence: Wood on Fire Insurance, 2d ed., § 482. A compromise, fairly entered into, discharges the original cause of action, which cannot be recurred to by either party: Berks Turnpike Co. v. Hendel, 11 S. & R. 123; and the settlement of an existing controversy is a good consideration for an agreement of compromise: Cham-

berlain v. McClurg, 8 W. & S. 31; Cavode v. McKelvey, Add. 56. In the case at bar, the amended proofs of loss returned December 13, 1888, relate back to the original proofs furnished on November 20th. Hence, the ninety days before bringing suit would expire on February 20, 1889, the very day the adjuster appeared and settled, promising that the money would be paid in two weeks. The agent, therefore, did not make any waivers, or change any of the conditions of the policy, except so far as he had authority or apparent authority to do.

OPINION, MR. JUSTICE STERRETT:

This action was grounded, not so much on defendant's contract, as evidenced by its policy of insurance, as upon the agreement made after the fire, by which plaintiffs' claim of $1,683.21 for loss, etc., was compromised and settled for $1,520.10 payable in a week or ten days thereafter. In plaintiffs' declaration or statement of claim, the policy of insurance, loss by fire, proofs and amended proofs of loss, offer to furnish any other information that might be requested, etc., are fully set forth as inducement to the alleged compromise and promise to pay. After reciting all these, and averring that "no other or further complaint was made, nor information asked by said defendant from said plaintiffs, in relation to the circumstances of the fire aforesaid, or the loss and damage thereby suffered," the plaintiffs further aver that " on or about the first day of February, 1889, the said defendant, by its duly authorized agent, W. M. Melchert, came to and upon the premises . . . . where the fire occurred, and where the loss and damage to said plaintiffs was suffered, and then and there compromised, adjusted and settled with said plaintiffs their claim of $1,683.21 for the sum of $1,520.10, under an agreement with said plaintiffs that said sum should be paid them by defendant within a week or ten days thereafter, in full satisfaction of their claim for their loss and damage aforesaid." In its affidavit of defence, the company alleges that in February, 1889, another or third, "proof of loss was asked for by it through its agent W. M. Melchert, and one was executed and given by said plaintiffs to said agent of said defendant, wherein the amount of said plaintiffs' claim from said defendant as set forth was $1,520.10," etc., but it denies that Melchert, either in behalf of the com-

pany or of himself, compromised, adjusted and settled with the plaintiffs as alleged in their statement.

As a witness on behalf of the defendant, Melchert testified on the trial, that he was then and had been for over five years in the employ of the company as its special agent and adjuster; that as such he visited the premises of the plaintiffs in February, 1889, " for the purpose of adjusting the loss and investigating the circumstances." In answer to the question: "State whether or not you adjusted the loss with them that day," his reply was, " I did." He further testified, in substance, that after the loss had been adjusted, the plaintiffs in his presence executed a proof of loss which he forwarded to the company within twenty-four hours thereafter. The plaintiffs both testified on the trial fully and circumstantially to the facts connected with the compromise and settlement of their loss by Melchert as agent of the company, in February, 1889, substantially as averred in their statement of claim above quoted. They both denied that they then signed an additional proof of loss, but admitted signing a paper containing, as they were informed, the terms of settlement made with Melchert.

The controlling issue was one of fact, viz., whether plaintiffs' claim was compromised and payment thereof promised as averred in the statement. That question was fairly submitted to the jury and found in favor of the plaintiffs. That finding of fact was conclusive against the defendant, and virtually disposed of every ground of defence based on conditions contained in the policy. " Where an insurance company, after a loss, has adjusted the claim therefor, and has agreed to pay a certain sum in liquidation of the claim, it cannot, in an action setting forth such facts, object that the action was not brought within the time limited in the policy. In such a case, the action is not upon the policy, but upon the agreement to pay. Neither, in such case, can it set up a breach of warranty or of any of the conditions of the policy in defence, for adjusting the loss and promising to pay it is a waiver of all breaches on the part of the assured, and of all defences which might have been made except for such waiver. A breach of warranty or of any condition in the policy must be insisted on when the claim is made, and before an agreement to pay the loss has been made : " 2 Wood on Insurance, § 450. In other words, after an adjust-

ment or compromise of the claim it is too late to impale the plaintiffs on any of the sharp conditions sometimes found in policies of insurance.

For the purpose for which it was offered, there was no error in admitting the testimony referred to in the first and second specifications. Nor was there any error in those portions of the charge recited in the third, fourth and fifth specifications, nor in answering either of defendant's four points. In view of the controlling facts found by the jury, and above referred to, the questions intended to be raised by those points became wholly immaterial.

Judgment affirmed.