COMMONWEALTH INSURANCE COMPANY OF NEW YORK, a corporation of the State of New York, defendant below, plaintiff in error, *vs.* MORE SOLOMAN, trading as Champion Auto Company, plaintiff below, defendant in error.

1. APPEAL AND ERROR—APPELLATE COURT WILL NOT WEIGH EVIDENCE IF IT IS SUFFICIENT TO SUSTAIN FINDING OF JURY.

If there is sufficient evidence to sustain a finding of the jury, an appellate court will not weigh the evidence supporting the finding to ascertain its comparative value as against other evidence.

2. PRINCIPAL AND AGENT—MANAGER OF ADJUSTMENT BUREAU FOR INSURANCE COMPANY COMPETENT TO TESTIFY AS TO AUTHORITY.

In an action by a policy holder against an insurance company on an agreement of settlement for a loss, where the agreement was made on the part of the company by an adjustment bureau, the manager of the bureau was a competent witness as to the authority of the adjuster.

3. INSURANCE—INSTRUCTION THAT, IF ADJUSTER AGREED TO PAY PROPERTY OWNER'S CLAIM FOR LOSS, COMPANY WAS BOUND THEREBY, HELD CORRECT; "ADJUST A LOSS."

Under *Rev. Code* 1915, § 599, providing that nothing shall prevent an insurance company from adjusting a loss by replacing the property destroyed, using the term "adjusting a loss" as broad enough to settle liability, in an action by a property owner against an insurance company on an agreement of settlement made for the insurance company by an adjuster employed by an adjustment bureau, an instruction that, if the adjuster was authorized to adjust the loss, and agreed on a compromise sum to pay the property owner's claim, the insurance company would be bound to pay the amount agreed upon in absence of fraud or mistake, was proper.

4. INSURANCE—ADJUSTER'S FIXING AMOUNT OF DAMAGE DONE BY FIRE DOES NOT RAISE IMPLIED PROMISE OF COMPANY TO PAY.

If an insurance adjuster meets with the assured, and fixes the amount of damages done by fire, that fact alone does not raise an implied promise to pay.

5. INSURANCE—AGREEMENT BY ADJUSTER WITH INSURED AS TO DAMAGE DOES NOT PREVENT COMPANY FROM CONTESTING LIABILITY.

Where an insurance adjuster does nothing more than agree with the assured upon the sound value and extent of damage, though the company could not repudiate the items agreed upon, it can contest its liability to pay.

6. INSURANCE—DENIAL OF LIABILITY BY ADJUSTER WAIVES FILING PROOFS OF LOSS.

A denial of liability under an insurance policy by an adjuster constitutes a waiver of policy provisions requiring the insured to file proofs of loss.

7. INSURANCE—AGREEMENT OF SETTLEMENT OF LOSS NEED NOT BE IN WRITING TO BE ACTIONABLE.

In order to be the basis of an action, an agreement of settlement for loss need not be in writing, regardless of the requirement in a standard policy contract that such agreement should be in writing, since the action is not on the policy, but on the agreement of settlement.

(*January* 16, 1923.)

WOLCOTT, Chancellor, RICE, HARRINGTON and RICHARDS, J. J., sitting.

*Andrew C. Gray* (of Ward, Gray & Neary) and *Leo Levy* (of the New York Bar) for plaintiff in error.

*Daniel O. Hastings* and *Clarence A. Southerland* for defendant in error.

Supreme Court, June Term, 1922.

Writ of error to Superior Court, New Castle County, No. 171, September Term, 1921; No. 11, June Term, 1922, of the Supreme Court.

For proceedings in Court below, *see 1 W. W. Harr. (31 Del.) 581, 117 Alt. 126.*

Defendant below issued to the plaintiff below two policies of insurance covering certain goods, chattels and fixtures, in the total amount of $9,700.00. Thereafter, the goods, chattels and fixtures so insured were destroyed by fire. The plaintiff below made claims under the policies for payment of the full sum of $9,700.00 as due thereunder, and the defendant below denied its liability tó pay the same. The declaration alleges that after the fire the defendant below, in consideration that the plaintiff below would abandon a portion of the claim and release the defendant below from all liability on its policies, promised and agreed to pay the

plaintiff below the sum of $6,835.64 in full settlement of the claim.

The action was brought, not on the policies of insurance, but on the agreement of settlement alleged to have been made between the parties.

Plaintiff below undertook to show that the alleged agreement was made and entered into on behalf of the defendant below by an adjuster sent by it to the locality for the purpose of adjusting the loss, with authority sufficiently broad to embrace the making of such an agreement as that sued on. Defendant below denied first, that the adjuster ever made the agreement declared upon, and second, if he did, the agreement was not binding on the defendant below because the adjuster had no authority to make such an agreement on its behalf.

WOLCOTT, Chancellor, delivering the opinion of the court:

The propositions of law advanced by the plaintiff in error are as follows:

1. The finding of the jury that an agreement of settlement was made between the insurer and the insured is against the weight of the evidence.

2. It was error to admit the testimony of the witness Monrose to prove what his agency was without preceding this by some other proof of the alleged agency.

3. There is no evidence to support a finding of the jury that the adjuster had authority to make the agreement alleged to have been made.

4. An adjuster of fire losses designated to adjust a particular loss, in the absence of express authority, has no authority to settle the claim finally and to promise on behalf of the insurer to pay such loss.

[1] 1. As to the first point, it is clear that it is not well taken. If there was evidence sufficient to sustain the finding of the jury, it is not for this court to assume the function of weighing it in order to ascertain its comparative value as against other evidence to the contrary. That is typically a function for the jury, and it would be highly improper for us to review the manner in which the jury performed it.

[2] 2. The witness Monrose was the manager of the General Adjustment Bureau, at Philadelphia. The business of the bureau was that of adjusting fire losses. This bureau was engaged by the plaintiff in error to act as its agent in adjusting the loss involved in this suit. Monrose was its manager and it was entirely proper to admit his testimony upon the question of the scope of the agent's authority. The contention of the plaintiff in error comes down to this, that an agent cannot testify as to the extent of his agency until after it has been proved in some other way. *Oldham v. Cooper, et al.*, 5 *Del. Ch.* 151, is cited in support of this proposition, but does not sustain it. All that case decides is that agency cannot be proved by the declarations of the alleged agent. It does not hold, nor does the case of *Phleger v. Ivins, et al.*, 5 *Harr.* 118, to which we are also referred, hold, that an alleged agent cannot be permitted to testify concerning the nature and extent of his employment, unless the agency is first shown by some other proof. We venture to say that no case can be found anywhere which so holds.

3. We have very carefully gone over the evidence and, though there is conflict therein, yet we find ample to justify the jury in believing that the insurer, plaintiff in error, expressly conferred upon the adjusting agent full power to make the agreement sued upon.

[3] 4. This point presents the only serious question in the case. While there is evidence in the record justifying the belief that the adjuster in this case had specific and express authority to settle the loss, yet a portion of the charge to the jury seems to have been predicated on the assumption that if the adjuster was empowered to make settlement, his authorization to that end was to be found only in his general authority to adjust the loss. That portion of the charge to which we refer, and to which exception is taken, is as follows:

"On the question of an adjuster's power, under his authority to adjust a loss, we will say that agency cannot be presumed; it must always be proved by the party relying on it, but it may be proved in various ways. The power of an admitted agent to do a particular thing may, in some cases, be shown by the nature of the business in which he is admittedly engaged. An insurance adjuster employed by an insurance company to adjust a particular loss has

certain powers in connection with that business which seem to be reasonably well-defined in many adjudicated cases.

"In the case of *Illinois Mutual Fire Ins. Co. v. Archdeacon, et al.*, 82 *Ill.* 236, 25 *Am. Rep.* 313, the court said: 'Where a loss has occurred, and the insured and the company meet and settle, and agree upon the amount of the loss, which is then endorsed on the policy, the very nature of the transaction would seem to imply that the adjustment should be final and binding, unless fraud or mistake has occurred.' The amount of the loss in that case, was endorsed upon the policy by the adjuster. The court further said: * * * 'The only difference between the case cited and this one, is: In the former, a promise to pay the loss as adjusted was proven, while here none was shown, but that cannot affect the principle involved, as the law will imply a promise to pay.' In that case the amount of the loss was in writing, and endorsed on the policy by the adjuster; but we think it is not essential that the agreement be endorsed on the policy or that it be in writing. It is essential, however, that there shall be a clear and binding agreement between the insurer and insured.

"As a result of an examination of the authorities on the subject, we take this to be the law: When an insurance adjuster is employed and directed by the insured to adjust a loss in a particular case, and in the performance of that duty agrees with the insured on the sound value of the property destroyed, the monetary loss of the insured and the pecuniary liability of the insurer, and also definitely and finally agrees with the insured on a compromise settlement of his claim at a certain sum owing from the insurer to the insured, and nothing further remains to be done by the insured and nothing further is to be done on the part of the company except to pay over the balance which has been agreed upon, the adjustment is final and binding on the insurer, unless fraud or mistake has occurred.

"And so we say, if you believe from the preponderance of the testimony that the defendant, acting through its own adjuster, who was authorized and directed by the defendant to adjust the plaintiff's loss, agreed with the plaintiff on the sound value of the property destroyed, the plaintiff's monetary loss, and defendant's pecuniary liability, and also definitely and finally agreed with the plaintiff on a certain sum owing from the defendant to the plaintiff in compromise settlement of plaintiff's claim, the defendant is bound to pay such sum, if there is no fraud or mistake shown, and nothing remains to be done by the parties except the payment and acceptance of the amount agreed upon."

For the plaintiff in error it is contended that it was error to so charge, because authority to "adjust a loss" does not, as a matter of law, embrace within its scope authority to agree to settle it. The plaintiff in error contends that all the adjuster could do as a matter of law under his authority to "adjust a loss," would be to ascertain the sound value of the property and the extent of the damage; and that he could not bind the company to an agreement to pay a compromise sum in settlement.

The policies issued to the defendant in error are standard fire policies. They nowhere make reference to an adjuster, or to adjusting the loss. These terms "adjuster" and "adjust a loss"

are very familiarly used in insurance terminology, but they are undefined by the standard policy contract.

When, therefore, in the above quoted language to the jury, reference is made to an insurance adjuster and to adjusting a loss, the meaning to be gathered from what was said is to be deduced not from the terms of the policy-contract between the parties, but from the sense in which the words are ordinarily used in common parlance.

If, therefore, an agent is given authority "to adjust a loss," to what extent may his authority couched in such language go? The Chief Justice in his charge to the jury assumed that the agent's authority so phrased would embrace within its scope power to bind the principal to an agreed settlement. We do not think it was erroneous to charge the jury on that assumption. Cases may be found where the view appears to be taken that an adjuster's authority to adjust a loss is confined solely to ascertaining the amount of loss, and that, if he undertakes to settle by promising payment of an agreed sum, some authority, other than that which inheres in the power to "adjust", must be shown before the company can be bound. Such a case seems to be *Bond v. National Fire Ins. Co.*, 77 *W. Va.* 736, 88 *S. E.* 389, to which we are referred by the plaintiff in error. In that case the facts were that the only proof as to the authority of the adjuster was what was said by the adjuster himself, who testified that his authority was to ascertain the loss and damages and the sound value of the property, and that he had no authority to settle. This being the state of the proof, the Supreme Court of West Virginia held that it was error to charge the jury that, if they believed from the evidence that plaintiff's and defendant's adjusters met to adjust the loss and that they did adjust it at a named sum and that defendant promised to pay it, then they must find for the plaintiff. The only evidence of a promise to pay was that the adjuster had so promised. This case, therefore, in its facts does not involve a definition of the scope of the power of an agent who is authorized "to adjust a loss." While the language of the court in discussing the question before it does contain expressions which appear to support the con-

tentions of the plaintiff in error, yet upon analysis it will be found that the facts of the case strip such language of decisional value, so far at least as their general application is concerned.

In this same connection counsel for plaintiff in error refer to *Searle v. Dwelling House Ins. Co.*, 152 *Mass.* 263, 25 *N. E.* 290. But we do not conceive this case to be an authority upon the proposition for which it is cited. The court in that case did say that the special adjuster "cannot be considered a general agent for the purpose of finally settling losses." The evidence showed that the special agent was directed to report back to the president of the company, which circumstance might be taken to negative any authority to effect a settlement. But upon this we express no opinion. Clearly that case is not an authority upon the question of what may be done by an adjuster in the exercise of a power "to adjust a loss," for what was indicated in that connection will, upon a careful reading of the case, appear to be dictum.

[4] Plaintiff in error also cited *Willoughby, et al., v. St. Paul German Ins. Co.*, 68 *Minn.* 373, 71 *N. W.* 272. In that case the distinction between adjusting the amount of damage done by the fire and the sum for which the company is liable is pointed out. The case holds that, if the adjuster meets with the assured and fixes the amount of the damage done by the fire, that fact alone does not raise an implied promise to pay. We find ourselves in entire accord with that view. What the Minnesota court would have said if the agent had been shown to have been authorized to adjust the loss and in the exercise of that power had assumed to expressly promise on behalf of the company to pay an agreed sum, the reported case, of course, does not disclose, the facts not calling for an opinion on such a question. But the manner of charging the jury in the case at bar does present just such a question in this court, and the Minnesota case can, therefore, be of no value as an authority in answering it.

While the plaintiff in error cites us to other cases in support of its contention that an agent authorized to adjust a loss has no authority to agree to a final settlement on behalf of his principal, we make no reference to them because upon examination we con-

sider that they are of no particular value or significance in connection with the point now under discussion.

If an insurance company sends its adjusting agent to visit the assured after a fire and holds out that agent to the assured as an agent possessed with power in its behalf to adjust the loss which the assured has suffered, we can see no reason why the insured should not very properly assume that such adjusting agent is armed with full power to settle the loss and bind his principal to a performance of the terms of the settlement.    Certainly the ordinary man would understand such to be the meaning of the expression "to adjust the loss."    Dictionaries of accepted authority give definitions of the word "adjust" entirely harmonious with what we conceive to be the popular understanding of the word. If an insurance adjuster comes as an agent duly accredited to adjust a loss, we regard it as highly unreasonable that the insuring company should be permitted to later say that the authority which its adjuster had was more limited than the words expressing it would naturally indicate, and that when he was given power to adjust the loss he was authorized not in any event to settle it, but at the most only to appraise its extent, measured in dollars.    This, we say, would be highly unreasonable.    If the insurance company does not wish its adjuster to possess the full authority which power "to adjust a loss" would naturally indicate, it can very easily protect itself by informing the assured to what extent the adjuster's authority goes.    If it does not do so, but sends the adjuster to the insured with authority to adjust the loss, then it is bound to the full extent that the natural purport of the language describing the agent's authority would indicate.    If the adjuster, in that state of facts, goes so far as to settle the liability and agree to its payment, his principal is bound by his acts.

[5]    If the adjuster, however, does nothing more than agree with the assured upon the sound value and the extent of damage, of course, the company, though it could not repudiate the items thus agreed upon, would, nevertheless, in such event, be free to contest the fact of its liability to pay.    But where the adjuster, possessing the authority to adjust the loss, goes a step further than this and

agrees upon a settlement which fixes the company's liability, then the whole matter is concluded, unless fraud or mistake has occurred. Any other rule would place the insured at a great disadvantage, and be fraught with possibilities of great injustice.

[6] We take it to be well settled that if an adjuster denies liability under the policy his act in so doing constitutes a waiver of the policy provisions requiring the insured to file proofs of loss. Among the cases cited *infra*, some will be found so holding. If such be the rule, that is, if an agent sent to adjust the loss can within the scope of his authority visit upon his principal all the consequences that flow from a denial of liability, we find it difficult to see why he cannot visit upon his principal all the consequences that flow from an admission of liability.

We refer to the following cases as expressing views in harmony with what we have hereinbefore said upon this branch of the case. While no case is found in which the question we are here discussing has arisen in just the way it has in this case, yet the following cases in their discussions of the problems involved in them state views which in principle sustain the views herein expressed: *Flaherty v. Continental Ins. Co.*, 20 *App. Div.* 275, 46 *N. Y. Supp.* 934; *Miller v. Consolidated P. & F. M. Ins. Co.*, 113 *Iowa* 211, 84 *N. W.* 1049; *Lancashire, etc., Ins. Co. v. Barnard*, 111 *Fed.* 702, 49 *C. C. A.* 559; *Wilms v. New Hampshire Fire Ins. Co.*, 194 *Mich.* 656, 161 *N. W.* 940; *Slater v. Capital Ins. Co.*, 89 *Iowa* 628, 57 *N. W.* 422, 23 *L. R. A.* 181; *California Ins. Co. v. Gracey*, 15 *Colo.* 70, 24 *Pac.* 577, 22 *Am. St. Rep.* 376; *McCollum v. Liverpool, etc., Ins. Co.*, 67 *Mo. App.* 66; *Wagner, et al., v. Dwelling House Ins. Co.*, 143 *Pa.* 338, 22 *Atl.* 885.

The valued policy law of this state, *Rev. Code* 1915, § 599 (*Section* 28), provides *inter alia* that "nothing herein contained shall, in case of loss, prevent the company insuring from adjusting the loss by replacing the property destroyed." We refer to this language of the statute solely for the purpose of pointing out that the General Assembly of the State manifestly understands that "adjusting the loss" is a phrase which extends beyond the idea of simply calculating the damage, as contended for by plaintiff in

error, and is sufficiently broad in scope to embrace the idea of settling the liability.

The court below, therefore, in its charge to the jury, spoke not alone in harmony with the well accepted meaning which ordinary usage attributes to the words "adjusting a loss," but as well also in harmony with the sense in which the lawmaking body of the State has used them in legislating upon an important phase of fire insurance law.

It is further objected that there was no evidence on which to predicate that portion of the above quoted excerpt from the charge reading as follows:

"And nothing further remains to be done on the part of the company, except to pay over the balance which has been agreed upon, the adjustment is final and binding on the insurer, unless fraud or mistake has occurred."

We cannot agree to this contention. While there is no express or direct evidence upon which this language of the charge could be fitted, yet, accepting as true all the testimony of the witnesses for the plaintiff below, its reasonable inferences and implications are such as to make the quoted language entirely pertinent to the evidence.

The defendant in error contends that even if the court erred in instructing the jury upon the assumption that power to adjust carries power to settle the loss, yet the error was harmless because it was cured by other portions of the charge. Entertaining the view that the charge is not erroneous, we are not, of course, called upon to dicusss this contention.

[7] No question is made concerning the right of the insured to bring suit on the agreement to settle instead of on the policy. But it is contended that such agreement, in order to be binding, must be in writing under the provisions of the standard policy contract, such as was issued in this case. We fail to find anywhere in the record any exception which justified this court in considering this contention. What we might say with respect to it is, therefore, gratuitous. We do not, however, hesitate to say that we see no merit in it, for the reason that the action is not on the policy, but on the separate agreement of compromise.

The judgment of the court below will be affirmed.