## Veihdeffer et ux. v. Keystone Mutual Casualty Co.

*Paul E. Beaver*, for plaintiffs.
*Robert C. Haberstroh*, for defendant.

FETTERHOOF, P. J., twentieth judicial district, specially presiding, April 11, 1940.—On February 27, 1939, James R. Veihdeffer and Maxine Veihdeffer, his wife, brought an action in trespass against Robert E. Kough in this court, for damages allegedly suffered by reason of cer-

tain negligent acts upon the part of defendant, while operating an automobile on December 18, 1938. The suit was tried before a jury and on May 8, 1939, James R. Veihdeffer obtained a verdict against defendant in the sum of $365, and Maxine Veihdeffer a verdict in the sum of $50. Upon these verdicts but one judgment was taken, and a writ of fieri facias was placed in the hands of the sheriff, which writ was returned by the sheriff nulla bona.

Plaintiffs now sue the Keystone Mutual Casualty Company, alleging in their statement that it issued to Robert E. Kough, the original defendant, "A policy of insurance called a motor vehicle operator's policy and numbered AL-19665, effective from September 14, 1938, to September 14, 1939, covering bodily injuries, $5,000 and $10,-000, and property damage $1,000; that said policy of insurance was issued to comply with the provisions of the Uniform Automobile Liability Security Act of May 15, 1933, P. L. 553," a certificate showing the issuance of said policy of insurance being filed with the Secretary of Revenue, Harrisburg, Pa., a photostatic copy of said certificate being attached thereto and marked exhibit A.

The Keystone Mutual Casualty Company moved to have plaintiffs' statement stricken from the record on the ground that plaintiffs did not attach a copy of the insurance policy to the statement, and the sixth and seventh paragraphs disclose they are "relying upon an improper, illegal and unauthorized judgment which is not sufficient to support the present action."

Upon this motion a rule was awarded and the matter is now before us for determination upon plaintiffs' statement and the motion of defendant.

During the course of the argument a number of facts were stated which are not set forth in the pleadings before us. It seems, however, that defendant, the insurance carrier for Robert E. Kough, maintains it is not liable to plaintiffs by reason of the fact the insured, Robert E. Kough, was operating a stolen car at the time of the al-

leged collision, contrary to the special provisions in the contract of insurance between him (Kough) and the casualty company.

Plaintiffs, having recovered in a suit against Kough, contend they are now suing on the operator's policy certificate filed with the Secretary of Revenue of the Commonwealth, and not suing on the policy of insurance issued to Kough by defendant, and that, therefore, they need not attach a copy of the insurance policy to the statement. They rely upon the force and effect they give through the interpretation of the Uniform Automobile Liability Security Act of 1933, supra.

In examining this act we find that it defines what is a "Motor Vehicle Liability Policy," and also a "Motor Vehicle Operators' Policy," which as stated means:

". . . a policy of liability insurance insuring the person named therein to the amounts or limits hereinafter specified against loss from the liability imposed by law upon the insured for injury to or death of any person other than the insured . . . and for damage to property other than property of others in charge of the insured, or of his employes or other agents, arising out of the operation by the insured of any motor vehicle. . . .

"(i) 'Proof of financial responsibility' means evidence in a form authorized by this act of ability to respond in damages, resulting from the operation or ownership of a motor vehicle," and in case of injury to or death of one person provides for $5,000 or $10,000 for two or more persons and damages to personal property of at least $1,000.

From a careful reading of the act we find that there are three ways by which one may have granted by the Secretary of Revenue an operator's license when proof of financial responsibility is required due to the revocation of a license for some infraction of the law so provided by the several motor vehicle acts. These three ways in section 2 are: First, by "the written certificate of an insurer . . . that it has issued to him, or for his benefit," a motor

vehicle operator's policy or "a motor vehicle liability policy . . ." which is in full force "and will so continue until the expiration of fifteen days after notice of expiration or cancellation shall first have been given to the secretary in writing"; second, "a bond conditioned for the payment of the amounts herein required for injury to or the death of persons, and damage to property, arising out of the ownership, maintenance, use, or operation by the principal of a motor vehicle within the continental limits of the United States of America . . ."; third, for the deposit of $11,000 in cash with the secretary for the payment of final judgments "entered against the depositor for injury to or the death of persons, and damage to property . . ."

It also states what is deemed evidence of ability to respond in damages and one of the provisions which is pertinent here is that "the written certificate of an insurer, duly authorized to transact business within the state of residence of the person applying for such registration" has been issued to him. The act further provides that the insurance policy must contain certain provisions to constitute proof of financial responsibility.

That the insurance carrier which executes a certificate (operator's policy certificate) "shall be conclusively presumed to have issued the policy mentioned in such certificate subject to such provisions whether or not they are set forth therein": sec. 6.

And in sections 6(b) and (c) that "The policy . . . shall constitute the entire contract between the parties", and "(c) The insurer shall, upon the request of the insured, deliver to the insured for filing, or at the request of the insured shall file direct, with the secretary an appropriate certificate for the purpose of furnishing proof of the assured's financial responsibility, as provided by this act."

The rights and liabilities of the insured, Robert E. Kough, and the insurer, Keystone Mutual Casualty Company, are fixed by the policy itself. The operator's policy

certificate, a copy of which is attached to plaintiffs' statement and marked exhibit A, refers to the original policy by number, effective date, coverage, parties, and the Uniform Automobile Liability Security Act, supra.

We have examined many financial responsibility acts now in force in other States and find they are very similar. These acts are comparatively new and nowhere in our search have we found any interpretation of the acts or any litigation involving the question now before us.

Appleman on Automobile Liability Insurance, p. 218, in discussing this subject, states:

"The purpose of financial responsibility laws is everywhere the same—to require persons who are believed to be negligent and reckless drivers to maintain a high degree of solvency in order to compensate any persons injured by their misconduct. The test made usually applies to those persons who have had accidents, and subsequently had judgments rendered against them which have remained unpaid. Under such circumstances, those statutes require, usually, the furnishing of an approved bond or policy of insurance as a prerequisite to continued operation of an automobile. Since the purpose of such policies is to indemnify innocent third persons and protect the general public, all policy defenses are taken from the insurer. A judgment, when rendered against the insured, becomes absolute against the company. No breach of the policy or failure of the insured to act can defeat the rights of injured parties. . . .

"While this provision renders those statutory expressions applicable which abrogate all policy defenses, it does so only so far as the rights of third persons are concerned. In so far as actions for reimbursement against the policyholder are involved, all exclusions, conditions, and other portions of the policy remain in full force and effect. And, of course, the policy assumes liability only as to accidents occurring after the issuance of the policy and terminating with the proper cancellation, lapse, or dissolution of the policy contract."

This act was passed for the protection of the public and there are no exceptions or exclusions to the liability of the person insured, when such liability is imposed by law. Kough, either because of his accident record, his infraction of the motor laws, or reasons for not being a careful or safe driver on the highway, was required to furnish proof of financial responsibility as a condition precedent to issuance or renewal to him of an operator's license. So that he might respond in damages, if any liability was imposed upon him by law, he chose the right to insure with the defendant company, one of the three above methods provided by law. The defendant company issued the policy to him, but in addition issued for the Secretary of Revenue an operator's license certificate without any restrictions.

For the privilege of the insurer getting an operator's license from the Secretary of Revenue defendant company said in effect, if a suit is brought against insured and he is liable in damages, we will pay. It is idle to say that defendant is only bound by the contract of insurance entered into between Kough and it, because had not defendant issued the certificate the license to operate a motor vehicle would never have been granted Kough. The act was passed in the interest of the public, the users of our highways, and if an insurance company can certify it issued "a motor vehicle policy to comply with the provisions of Act No. 110-1933, as amended," and then plead it is not liable, the said act is thwarted and the rights of the third person in whose interest and protection it was enacted are jeopardized.

If defendant had exercised the option and given a bond or deposited cash as evidence of his ability to respond in damage, it could not be argued plaintiffs would not have been fully protected when defendant was subject to a "liability as imposed by law." Here, according to plaintiffs' statement, they brought suit against Robert E. Kough in trespass for damages resulting from his negligent operation of an automobile. Verdicts were rendered

against Kough which fixed a "liability imposed by law" in accordance with said Act of 1933, as amended, and, therefore, defendant is liable upon the operator's policy certificate then in force, regardless of the policy. Of course, if the policy of insurance was not in effect at the time plaintiffs sustained damages, defendant would not be liable, or in the event the damages exceeded the limit provided in the Uniform Automobile Liability Security Act, then defendant would only be liable to the extent provided in said act.

The issuance of the certificate by defendant creates in a sense a new contract. In consideration of the Secretary of Revenue issuing a license to Kough to operate a motor vehicle, defendant agrees to compensate any person injured by the conduct of Kough, in accordance with the Financial Responsibility Law. The right of plaintiffs here to sue on the operator's policy certificate, without suing on the policy, is somewhat analogous to the right of an insured to sue an insurance company upon a compromised and agreed settlement of an amount claimed upon a loss without bringing suit on the policy. In Wagner et al. v. Dwelling-House Ins. Co., 143 Pa. 338, the court held (p. 351):

" 'Where an insurance company, after a loss, has adjusted the claim therefor, and has agreed to pay a certain sum in liquidation of the claim, it cannot, in an action setting forth such facts, object that the action was not brought within the time limited in the policy. In such a case, the action is not upon the policy, but upon the agreement to pay. Neither, in such case, can it set up a breach of warranty or of any of the conditions of the policy in defence, for adjusting the loss and promising to pay it is a waiver of all breaches on the part of the assured, and of all defences which might have been made except for such waiver.' "

The policy of insurance is not in the possession of plaintiffs as it is the property of Kough, the insured. They have the right to sue on the operator's policy certificate

and, having done so and attached a copy of said certificate to their statement of claim, that is all that is required. We, therefore, conclude they are not required to attach a copy of the policy of insurance with Kough to their statement of claim under section 5 of the Practice Act of May 14, 1915, P. L. 483.

Defendant attacks the judgment, upon which plaintiffs seek to recover, on the ground it has not been secured in accordance with the law. We feel this question is not properly raised upon a motion to strike off plaintiff's statement, but rather should have been raised in an affidavit of defense raising questions of law.

"The motion to strike off the statement goes to its form, and whether it is in compliance with the requirements of the Practice Act of May 14, 1915, P. L. 483. The affidavit of defence raising questions of law only goes to the substance and merits of plaintiff's cause of action. That is, a statement may be in perfect form, conforming in every particular to the demands of the Practice Act as to pleading, yet failing to present a legal cause of action. In such a case, an affidavit of defence raising questions of law is the proper remedy": Kennedy v. Scranton Ry. Co., 29 Dist. R. 751; Smith's Penna. Practice Act (4th ed.) 426.

While it is not necessary to discuss this question at length to dispose of the motion to strike off, yet since the question is presented to us we desire to draw to plaintiffs' attention the Act of May 8, 1895, P. L. 54, 12 PS §1621, relative to actions of husband and wife, separate verdicts, separate judgments, and separate execution thereon.

It would, therefore, appear that the judgment was improperly taken, and as we understand separate verdicts were properly rendered, the procedure from there on, that is from the rendering of the verdicts, should be properly corrected by amendments, or otherwise as required, before further steps are taken in this action: Linhoss et ux. v. Hodgson, 310 Pa. 339.

*Decree of court*

And, now, to wit, April 11, 1940, after due and full consideration, defendant's rule to show cause why plaintiffs' statement of claim should not be stricken from the record is hereby discharged, and defendant is allowed 30 days within which to file an affidavit of defense.