Rivers *v.* Delaware Valley Mutual Casualty Co.,
Appellant.

Argued September 15, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, and FLOOD, JJ. (RHODES, P. J., and MONTGOMERY, J., absent).

*Sheldon Tabb,* for appellant.

*Maurice Freedman,* with him *Robert H. Arronson,* and *Herbert. H. Hadra,* for appellee.

OPINION BY FLOOD, J., November 16, 1961:

This is an appeal from a judgment entered upon the pleadings in an action against a liability insurance company. The complaint avers that the defendant had written an automobile casualty insurance policy for Edward McCullough which was in full force and effect on July 16, 1960, when McCullough, while driving the insured vehicle, had a collision with the plaintiff's car. The plaintiff made a claim against McCullough, which the defendant company and the plaintiff agreed to settle. On September 9, 1960, the defendant forwarded to the plaintiff a release in the amount of $270 and,

in an accompanying letter, advised the plaintiff that upon return of the release properly executed it would forward to him a check for this amount. The plaintiff on or about September 10, 1960, executed and returned the release but the defendant failed to pay the $270, for which suit was brought.

The defendant's answer averred that McCullough had warranted that he had had no automobile collisions during the three preceding years and that on July 8, 1960 an automobile liability binder was issued to him in reliance upon this warranty. The defendant received reports from McCullough that he was involved in automobile accidents on July 15, 1960 and August 5, 1960, and an extensive investigation was undertaken as to the truth of the warranties made by McCullough. It was discovered on or about November 3, 1960, that McCullough had been involved in a motor vehicle accident on March 19, 1959, and in a number of other accidents prior thereto, and that his warranty was false and made for the purpose of deceiving the defendant. Upon receipt of this information, the defendant took immediate steps to rescind the binder. The defendant admitted that it had agreed to settle plaintiff's claim against McCullough, that it had sent the letter agreeing to pay the plaintiff $270 upon receipt of a release executed by the plaintiff, and that such a release was returned to it, but it denied liability on the ground that no valid liability binder had been issued to McCullough because of his fraudulent representation and warranty and that there was no consideration for the compromise agreement.

The court below held that there was a bilateral contract based upon mutual promises and when the plaintiff returned the signed release to the defendant it constituted full performance on his part and, as far as he was concerned, became a fully executed covenant, enabling him to sue and recover from the defendant.

If plaintiff were suing as a third-party beneficiary on the insurance contract his rights would rise no higher than those of McCullough, the insured. *Williams v. Paxson Coal Co.,* 346 Pa. 468, 31 A. 2d 69 (1943). In such suit the defendant could interpose the defense of McCullough's fraud to prevent judgment on the pleadings.

But this defense does not reach the entirely separate agreement of compromise and settlement upon which the plaintiff is suing. This contract was an efficient agreement of compromise of a disputed claim, and therefore binds the defendant irrespective of the validity of the underlying insurance agreement. The compromise of disputed claims, whether in fact valid or not, furnishes sufficient consideration for an agreement of compromise. Cf. *Gaynor v. Quinn,* 212 Pa. 362, 61 A. 944 (1905). The sufficiency of the consideration is not to be determined by the soundness of the claim of either party, the very object of a compromise being to avoid the trouble and risk of that question. *Hensel v. Cahill,* 179 Pa. Superior Ct. 114, 116 A. 2d 99 (1955). Such an agreement as that between the plaintiff and the defendant here is a compromise agreement, and as binding as any other bilateral contract even while the promises contained therein remain unexecuted. *Flegal v. Hoover,* 156 Pa. 276, 27 A. 162 (1893).

The defendant contends that (1) since there was no valid insurance contract, the compromise agreement is void for lack of consideration, and (2) the compromise agreement was unenforceable since it was based upon mutual mistake as to the existence of a valid insurance contract.

It is of the essence of a compromise agreement that the parties are unsure of their rights, and settle them rather than fight them out in court. Purported compromises have been set aside as being without consider-

ation only in such cases as the acceptance of a lesser sum as payment in full of an undisputed larger claim (*Thomas v. Hill Top Section,* 260 Pa. 1, 103 A. 504 (1918)), or where the party asserting the claim obviously had no claim, and did not entertain an honest and reasonable belief that he did have a valid claim. *Lombardo v. Gasparini Excavating Co.,* 385 Pa. 388, 123 A. 2d 663 (1956). There is no such situation here. There was a valid insurance contract in existence, even though it might have been voidable for fraud. Moreover, there was a good faith dispute between the parties as to defendant's ultimate liability to the plaintiff. The parties settled it. This is good consideration. See, *Lombardo v. Gasparini Excavating Co.,* supra, at pages 390-392, 123 A. 2d at page 665.

Defendant argues that the giving of the release was something which plaintiff would have to do in any event to collect as a third party beneficiary under the insurance contract, that its execution was merely partial performance by him under the insurance contract and that such performance furnishes no consideration for the compromise agreement. Without considering other difficulties which might prevent us from accepting this argument, it is enough to say that it is based upon a false premise. If the plaintiff's claim turned out to be valid, it would be possible for him to obtain judgment, enforce it by execution and collect it without giving any release. Giving a release is the usual, but not a necessary concomitant of the collection of a claim under such a contract.

The defendant's claim of mutual mistake is not justified under the allegations of the complaint and answer upon which judgment was entered. The alleged mistake is the belief of both plaintiff and defendant that there was a valid policy of insurance in existence at the time of settlement. Actually there was no such mistake, since the policy, though subject to rescission,

remained in full force until rescinded and was in force at the date of the settlement.

The defendant cites *Sanders v. Lawn Mutual Insurance Co.*, 194 Pa. Superior Ct. 491, 168 A. 2d 758 (1961), where the Court affirms the position that a contract, made under a mutual mistake as to an essential fact which forms the inducement to it, may be rescinded upon the discovery of the mistake if the parties can be placed in their former position with reference to the subject matter. But the Court found no mutual mistake because only the insurance company was mistaken, and was so only because it misinterpreted or misread facts as to which it had equal access with the plaintiff. This case clearly tells against the defendant rather than in its favor.

The opinion reaffirms the rule stated in *Rohrbach v. Travelers Indemnity Co.*, 278 Pa. 74, 122 A. 217 (1923), as follows: "Where the contracting parties stand on common ground and have equal means of knowledge, an exaggerated statement by one, in a matter of opinion, will not entitle the other to relief . . . and this is especially true in the adjustment of a loss . . ." With regard to the validity or voidability of the policy in this case, the defendant had not only equal, but perhaps superior, knowledge as to the facts because it then appears to have known of two accidents (three, including plaintiff's) that had happened in the short period since the execution of the policy and, as the averments of its answer show, it already suspected, as a result, that the representations of the insured were false. The answer states in paragraph fifteen of the new matter: "Defendant received reports from Edward McCullough that he was involved in automobile accidents on July 15, 1960 and August 5, 1960 . . ." If it had not received those reports prior to the date of settlement, it should have so averred. The inference from its own pleading is that it received them earlier, shortly after the accidents, as would normally be the case.

As Judge ERVIN said in *Sanders* case, "The law favors the amicable settlement of controversies and it is the duty of the courts to encourage rather than to discourage parties from resorting to compromise as a mode of adjusting conflicting claims . . ." 194 Pa. Superior Ct. at pages 495-496, 168 A. 2d at page 761.

When an insurance company has adjusted a claim, it normally cannot set up a breach of the conditions of the policy since they are considered waived. *Wagner v. Dwelling-House Insurance Co.*, 143 Pa. 338, 22 A. 885 (1891); *Todd v. Quaker City Mutual Fire Insurance Co.*, 9 Pa. Superior Ct. 371 (1899). A breach of warranty in the inducement of the contract is in the same category. This is quite different from a settlement based upon a fraudulent misrepresentation as to the extent of the loss itself by the claimant (*Miller v. Iron City Mutual Fire Insurance Co.*, 4 Pa. Superior Ct. 605 (1897)). or by the insurance company's agent. *Beeman v. Calvert Fire Insurance Co.*, 173 Pa. Superior Ct. 20, 94 A. 2d 90 (1953). We have recently held that the subsequent acquisition of information, unknown at the time of the settlement, which might well have moved one of the parties not to make a settlement is not a good ground for setting it aside. *Bollinger v. Randall*, 184 Pa. Superior Ct. 644, 135 A. 2d 802 (1957).

Judgment affirmed.