Warren Tank Car Company, Appellant, *v.* Dodson.

282

Argued March 28, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, LINN, STERN and BARNES, JJ.

*Thompson Bradshaw*, of *Bradshaw, McCreary & Reed*, with him *Linas V. Ledebur* and *Sidney D. Blackman*, for appellant.

*Leonard L. Ewing*, with him *Harold F. Reed*, of *Reed & Ewing*, for appellee.

OPINION BY MR. JUSTICE STERN, May 9, 1938:

Plaintiff manufactures rolling stock. Defendant operates a traveling carnival. On May 10, 1929, plaintiff leased to defendant eighteen flat cars for a term from October 1, 1929, to April 1, 1932, at a rental of $40,766, payable in six semi-annual installments of $6,794.33 each, the last of which was due on April 1, 1932. If defendant performed all the terms of the agreement he was to have the right to purchase the cars for the sum of one dollar. The lease provided that "in the event a default

is made in the payment of the rental on the day whereon the same shall become due, then the lessor, its successors or assigns, shall, at its own option, forthwith proceed to take exclusive repossession of the cars hereby leased, and shall by its duly accredited agents, employees or attorneys, make immediate seizure of the said cars wherever found, without notice or process of law, privilege of entry upon the premises of the lessee for the said seizure after default being hereby granted."

The first installment payment, due October 1, 1929, was paid at that time. During 1930 only $3,300 was paid, and in 1931, $1,500. During the next two years no payment whatever was made, but in 1932 a credit was allowed to defendant of $5,000 for the return of five of the cars. In 1934, $850 was paid. In 1935, $1,200 was paid under a special arrangement by which plaintiff agreed it would not seize the cars during that season. During all this time plaintiff was more or less continuously urging defendant to make further payments, but defendant asserted his inability to do so, threw himself upon the generosity of plaintiff, and repeatedly expressed his willingness that plaintiff should repossess the cars because of the defaults in payment. Including the credit above referred to there was paid under the lease the sum of $18,644.33. The balance of principal and interest due on March 1, 1936, was $29,382.84.

In May, 1935, defendant required the use of additional cars, and, at his request, plaintiff loaned six to him without charge; they were to be kept in repair by defendant and to be returned upon demand.

In May, 1936, plaintiff brought the present proceedings in replevin for these six cars.[1] As a defense to the action, defendant asserted that in February, 1936, it was orally agreed between himself and plaintiff that if

---

[1] The writ of replevin also covered another car which was one of the eighteen leased, but defendant concedes plaintiff's title to that car and it is not involved in the present appeal.

he would immediately surrender possession of twelve cars held by him under the lease of May 10, 1929,[2] plaintiff would give him title to the six cars loaned in May, 1935, that he thereupon did surrender the twelve cars to plaintiff and the latter leased or sold them to another party; accordingly defendant claimed ownership of the six cars. At the trial plaintiff denied the making of such an agreement. It claimed that the leased cars had been surrendered to it upon request without any inducing promise in return, and, as for the six loaned cars, plaintiff did not offer to give them to defendant but merely to sell them to him at a stated price on easy terms of payment. The issue of fact thus created was submitted to the jury. The verdict was in favor of defendant,—a finding which seems strange in view of the improbability of defendant's version and the fact that in telegrams sent by defendant after the making of the alleged agreement he gave no indication of any thought on his part that the six cars had been given to him. However, upon the present appeal, the verdict is conclusive as to the facts.

The legal question arises whether the agreement upon which defendant relies lacked consideration and is therefore nudum pactum. It is plaintiff's contention that it had the right, upon defendant's default, to seize the cars "without notice or process of law," and since, when the alleged oral agreement was made, defendant had been in default for several years to the extent of many thousands of dollars, it could have taken the leased cars at will, and the surrender of them by defendant amounted to nothing more than the performance of his legal obligation.

It seems to have been the thought of the learned trial judge, as gathered from his charge to the jury, that, be-

---

[2] Of the eighteen cars leased, five had been returned to plaintiff in 1932 and one continued in defendant's possession until the replevin proceedings, but defendant makes no claim in regard to it.

cause plaintiff was eager to obtain immediate possession of the leased cars, and defendant might, by refusing delivery, have forced a resort to legal proceedings, plaintiff derived from the voluntary surrender a benefit which constituted a consideration for its promise to make a gift of the other cars. This view of the law is not tenable. It is in direct opposition to the principle that a promise to carry out a contract subsisting between the parties, or the performance of such a contractual duty, is not a consideration which will support a contract. It is only when the legal duty is doubtful or the subject of honest and reasonable dispute, that a promise to perform it may serve as consideration for a new contractual obligation: Restatement of the Law of Contracts, section 76. Here, there never had been a dispute of any kind between the parties; so far from denying plaintiff's right to repossess the cars at any time, defendant himself had frequently suggested their surrender. In *Erny v. Sauer*, 234 Pa. 330, a mortgagor in default agreed to give up possession of the mortgaged property and to make a deed of conveyance to the mortgagee; the latter in return agreed to release the mortgagor from further obligation on the mortgage; the mortgagor surrendered possession in accordance with the agreement. It was held that since the mortgagee was entitled to take possession because of the default, as well as to foreclose, there was no consideration passing to him by the voluntary surrender of possession, and the agreement, therefore, to release the mortgagor was not legally binding.

On the motion for judgment n. o. v. the court in banc advanced another theory of consideration as apposite to the case. It called attention to the well known principle that where a contract provides for payments at certain times, and for forfeiture upon default, but the creditor, either by inaction or by an affirmative course of dealing, misleads the debtor into the belief that strict regularity of payments will not be insisted upon, he cannot thereafter declare a forfeiture unless he first gives rea-

sonable notice to the debtor that in the future he will demand performance at the precise times specified in the contract. The court was of opinion that plaintiff, by reason of its continued indulgence, had lost the right to demand immediate repossession, and the prompt surrender of the cars, not being obligatory upon defendant, constituted a consideration for plaintiff's alleged promise.

The doctrine thus invoked is applied to various types of cases in which attempts are made to declare forfeitures or to rescind contracts.[3] It has, however, no application to the present situation. Neither in its theoretical nor its practical aspects is it available for the purpose for which defendant now seeks to employ it. It is a principle, not of law, but of equity. From the strict *legal* standpoint the creditor is entitled to enforce the forfeiture according to the terms of the contract, but *equity,* or a court administering equitable principles under legal forms, will not permit him to do so if by lulling the debtor into a false sense of security he has led him into a default which otherwise the debtor might have avoided. Being an equitable doctrine, it is limited by the conditions which equity imposes upon those who seek its relief, and among such conditions the most familiar—and the oldest in the history of equity jurisprudence—is the requirement that he who seeks equity must do equity. Prior indulgence by the creditor does not give the debtor an automatic right to an extension,

---

[3] For example: *Forsyth v. North American Oil Co.,* 53 Pa. 168, 171, 173; *Duffield v. Hue,* 129 Pa. 94, 109; *Lynch v. Versailles Fuel Gas Co.,* 165 Pa. 518; *Riddle Co. v. Taubel,* 277 Pa. 95; *Price v. Beach,* 20 Pa. Superior Ct. 291, 295; *Portland Ice Co. v. Connor,* 24 Pa. Superior Ct. 493; *Goff–Kirby Coal Co. v. Marine Coal Co.,* 31 Pa. Superior Ct. 60; *Bounomo v. United Distiller's Co.,* 77 Pa. Superior Ct. 113, 117; *Dunham, Inc., v. Nemitz,* 82 Pa. Superior Ct. 382; *Poles v. State Mutual Benefit Society,* 129 Pa. Superior Ct. 297, 301.

but merely a reasonable opportunity to perform *provided* he can show that additional time would enable him to do so. The relief is not against the obligation but against the forfeiture, on the ground of surprise, and it is conditioned upon the covenant, for the breach of which the forfeiture was declared, being fully and promptly performed. Thus, if a creditor, by a course of indulgence, has waived the right to insist upon punctual performance, but nevertheless enforces a forfeiture without previous notice of intention, and the debtor attempts by appropriate proceedings to recover the property seized by the creditor and to have the forfeiture remitted, it is obvious that no relief will be afforded him in equity unless he tenders belated performance, or, at least, is able to demonstrate his ability to perform if reasonable indulgence be granted him. Where a forfeiture is declared because of default in the payment of money, a court of equity will relieve the debtor only upon his paying the debt: Pomeroy's Equity Jurisdiction, 4th ed., vol. 1, p. 807, section 433.

In the present case defendant's own testimony amounted to an admission that, although in February, 1936, his debt of nearly $30,000 to plaintiff had been long overdue, he was wholly without means to pay it. He testified he did not have enough money in March and April, 1936, even to send lengthy telegrams, or to retain a lawyer, nor enough in May to obtain a bond in the present replevin proceedings. He did not pretend that any indulgence, however great, would have enabled him to pay the balance due under the lease and thus avoid a seizure of the cars. At that time, indeed, the cars were worth much less than the amount remaining due thereon. The record discloses nothing upon the basis of which defendant could claim an equitable right which would have entitled him to refuse a demand on the part of plaintiff for repossession, or upon which he could successfully have resisted legal proceedings if brought for

that purpose. In agreeing that plaintiff could immediately take the cars he was not surrendering a right, but submitting to the enforcement of his contractual obligation.

As support for his position defendant cites the case of *Weigand v. Standard Motor Co.,* 109 Pa. Superior Ct. 256. There the lessor of an automobile under a bailment lease assigned the lease to a company which had financed the transaction, the lessor agreeing to become surety to the assignee for the payment of the rentals. It was held that a subsequent agreement by the lessee to surrender the automobile to the original lessor constituted a valid consideration for a promise by the latter to sell the car and turn over to the lessee the surplus remaining after payment of the rentals. The court pointed out that the power to repossess the car had passed to the assignee, since the original lessor had given up all its rights as lessor and instead had assumed, as a surety, the duties of the lessee. In the present case plaintiff assigned defendant's lease to Warren Savings Bank & Trust Company, trustee under a car trust agreement, but the assignment was only as collateral security, so that the position of plaintiff as lessor was maintained, and it is clear from the record that plaintiff was at all times recognized as having the right, as far as the trust company was concerned, to act as such, to enforce the provisions of the lease, and to repossess the cars.

Our conclusion being that the agreement found by the jury to have been entered into by the parties lacked the consideration necessary to constitute it a valid and enforceable contract, the judgment is reversed and is here entered for plaintiff.