Falgiatore, Appellant, *v.* Falgiatore.

Argued April 13, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Thomas C. DiNardo,* for appellant.

*Thomas I. Guerin,* with him *Isadore Penn,* for appellee.

OPINION BY MR. JUSTICE ARNOLD, September 27, 1954:

In this action of assumpsit the court below entered judgment on the verdict of the jury in favor of the de-

fendant. The plaintiff appeals from the refusal of his motions for judgment non obstante veredicto and for a new trial.

The plaintiff presented no point for binding instructions and, therefore, a judgment n.o.v. cannot be entered, nor can the want of a timely presentation of a point for such instructions be later supplied nunc pro tunc: *Essex Packers Limited v. Kisecker,* 373 Pa. 351, 356, 357, 95 A. 2d 544.

Nor is the plaintiff entitled to a new trial, for a study of the record discloses that the trial was full and complete and without error. The evidence disclosed the facts to be as follows: The parties are first cousins who live in the same locality in the city of Philadelphia. Plaintiff has not been financially successful although the defendant has been. Plaintiff had been having some difficulties with his wife and in the early part of 1949 asked the defendant to help him get things straightened out. Defendant discussed the marital difficulties with the plaintiff's wife on several occasions, and matters seemed to have been arranged satisfactorily. A little later the defendant went to the plaintiff's house and at his arrival only the wife was there. Plaintiff came in and, without any explanation, ordered the defendant to leave. The following morning the plaintiff called defendant by telephone and stated: "I want $10,000 or else you get killed. If I can't do it I will get somebody else to kill you." He continued to make like threats as well as to threaten to talk about the matter to the defendant's wife and family. At no time did he charge the defendant with adultery, but gave the impression that he was about to do so. About all that appears is that he objected to the familiarity of the defendant with his wife.

Early in May, 1949, plaintiff had suffered a nervous breakdown, and because of fear of what plaintiff

might do, and also to placate him, defendant on June 3, 1949, consented to execute the contract upon which issue was brought,—which provided for payment of $3,000 to plaintiff and stated that the contract was a release made by plaintiff to the defendant "from any claim for damages" he had against the defendant. Defendant contends—and the jury's verdict sustains his position—that the execution of the contract was obtained by duress and without consideration.

There was nothing before or after the execution of the contract which showed criminal conversation or any other act which hurt the plaintiff, who stated to one of the witnesses, when asked what defendant had done to him: "Nothing. If I had come in twenty minutes later . . . he might have had sexual relations with my wife." Nor was there any other consideration passing from plaintiff to the defendant for his promise to pay the money. On the other hand there is no doubt that the moving cause for the defendant's execution of the contract was a reasonable and well-founded fear of his life and fear that the plaintiff would break up his home. Defendant testified, inter alia: "I started worrying. Every day . . . [plaintiff was] threatening me to death. . . . A crazy man is liable to do anything. I started to worry; I didn't know what to do . . ."

Duress is "any wrongful threat of one person by words or other conduct that induces another to enter into a transaction under the influence of such fear as precludes him from exercising free will and judgment, if the threat was intended or should reasonably have been expected to operate as an inducement": Restatement, Contracts, §492 (b). "The test of duress is not so much the means by which the party was compelled to execute the contract as it is the state of mind induced by the means employed,—the fear which made it impossible for him to exercise his own free will . . .

The threat must . . . constitute a reasonable and adequate cause to control the will of the threatened person and must have that effect, and the act sought to be avoided must be performed by such person while in such condition": *Fountain v. Bigham*, 235 Pa. 35, 45, 84 A. 131. The fear need not result from personal infirmity. If it arises from circumstances which might produce a like effect upon persons of ordinary firmness, it is a basis for avoidance of the contract: *Sulzner v. Cappeau-Lemley & Miller Company*, 234 Pa. 162, 166, 83 A. 103. A reading of the testimony leaves no doubt that this contract was obtained by intimidation, is without consideration, and therefore void.

Plaintiff contends that his "promise to forbear from the exercise of a right is sufficient consideration to support" the contract. But the "forbearance to assert an invalid claim . . . by one who has not an honest and reasonable belief in its possible validity" is not sufficient consideration: Restatement, Contracts, §76 (b) ; *Warren Tank Car Company v. Dodson*, 330 Pa. 281, 285, 199 A. 139. Plaintiff could have had neither an "honest" nor a "reasonable" belief of the "validity" of the contract.

Plaintiff's contention that the court erred in its charge is without merit. It was fair and full, and left no doubt as to the issues to be determined by the jury. It clearly placed upon the defendant the burden of proving his defense of duress, and the jury was fully instructed as to the proof required. The plaintiff filed no exceptions to the charge and in response to the court's question stated that there was nothing else desired. A party may not remain silent and take his chances on a verdict and then, if it is adverse, complain of any inadequacy which could have been corrected: *Meholiff v. River Transit Company*, 342 Pa. 394, 398, 20 A. 2d 762. In addition we find no error

either through inadequacy or otherwise in the court's charge.

Judgment affirmed.