Lombardo, Appellant, *v.* Gasparini Excavating Co.

Argued May 23, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*William S. Bailey,* with him *Bailey & Rupp,* and *Homanich, Dutka & Yavorek,* for appellant.

*Joseph E. Gallagher,* with him *James J. Ligi, Carlon M. O'Malley, O'Malley, Morgan, Bour & Gallagher* and *Jenkins & Ligi,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, June 25, 1956:

Plaintiff appellant brought this action in assumpsit to compel defendant corporation to account for the profits realized from a coal stripping operation and to pay plaintiff 50 per cent thereof. The case was tried before a jury and resulted in a disagreement. Pursuant to defendant's motion, the court below in a unanimous decision entered judgment upon the whole record in favor of the defendant, under the provisions of the Act of April 20, 1911, P. L. 70, 12 PS §684. Plaintiff thereupon took this appeal. In reviewing the record we will consider the facts and the reasonable inferences therefrom in a light most favorable to the plaintiff as we are required to do: *Maloney v. Madrid Motor Corporation,* 385 Pa. 224, 122 A. 2d 694; *Harris v. DeFelice,* 379 Pa. 469, 109 A. 2d 174. Thus viewed, the following factual situation is present.

On July 10, 1945, plaintiff obtained a written license, revocable at any time by the licensors, to strip mine coal from land owned by the latter. A day or two later, plaintiff sought out Gene Gasparini, president of defendant corporation, and tried to interest him in carrying out the stripping work. By arrangement, the two met on the land with one of the licensors who expressed the opinion that there was coal approximately twenty feet below the surface. Mr. Gasparini then told plaintiff that as soon as the company had a dragline (piece of strip mining equipment) available, it would be sent to the location and mining operations commenced. No terms were agreed upon or discussed at that time, the understanding being that they were to be worked out later after the dragline

was brought to the property. Defendant never sent the dragline, although requested to do so by the plaintiff, Gasparini saying the equipment was unavailable. On May 11, 1946, plaintiff's license to strip the land was cancelled because of his failure to begin the stripping project. Thereafter, on June 20, 1946, defendant obtained licenses to strip mine the side of a mountain consisting of five separate tracts, one of which was the tract for which plaintiff previously had his license. Defendant began stripping shortly thereafter. About October 15, 1947 plaintiff complained to Mr. Gasparini that he had been ill treated and threatened to sue defendant corporation and, after some discussion, agreed not to do so when Gasparini promised to give him one-half of the profits from the stripping project.[1] Upon defendant's failure to pay plaintiff any of the profits, this suit was instituted.

The sole question to be decided is whether plaintiff's promise to refrain from suing is a sufficient consideration to support defendant's promise to share half of the profits. The legal principle involved is one which has had a long development in the law. In Williston on Contracts, (Rev. Ed.), Vol. 1, §135, it is said: "The early English law apparently made no distinction in regard to the sufficiency of a claim which the claimant forbore to prosecute, or promised to forbear to prosecute, as the consideration of a promise, other than the broad distinction between good and bad claims. The forbearance or promise to forbear to prosecute an unfounded claim was insufficient consideration. . . . In the early part of the nineteenth century an advance was made from the position of the earlier authorities, and it was held that forbearance to prosecute a suit

---

[1] Gasparini denied making any such agreement, but we are considering the evidence most favorable to the plaintiff.

which had been already instituted was sufficient consideration without inquiring whether the suit would have been successful or not. [*Longridge v. Dorville*, 5 B. & Ald., 117] The case is ordinarily cited for the proposition that forbearance of a doubtful claim is good consideration. . . . What constitutes a doubtful claim within the meaning of this rule, however, is not always easily defined. The most recent English cases have gone still further and held that if a claim is honestly asserted and is 'reasonable' or is 'not vexatious and frivolous,' the forbearance or the promise of forbearance to prosecute the claim is sufficient consideration. . . .". In Pennsylvania it was early held and often repeated that surrender or compromise of a doubtful claim and forbearance to sue thereon is sufficient consideration.[2] However, it has also been held that if the claim forborne is groundless, (*Huntingdon County v. Spyker's Exrx.*, 274 Pa. 570, 118 A. 501), or if there is no bona fide foundation for it and the claim is not asserted honestly and in good faith (*Bryant v. Bryant et al.*, 295 Pa. 146, 144 A. 904), it will not serve as consideration. Although at one time commentators, in reviewing the Pennsylvania cases, expressed doubt whether a wholly unreasonable claim asserted in good faith is sufficient consideration for a promise,[3] subsequent decisions of this Court have adopted the rule as set forth in the Restatement of the Law of Contracts, §76(b) that ". . . forbearance to assert an

[2] *Fleming v. Ramsey*, 46 Pa. 252; *Mary E. Gormly v. Wm. M. Gormly, Jr.*, 130 Pa. 467; *Flegal v. Hoover et al.*, 156 Pa. 276; *Sutton v. Dudley et al.*, 193 Pa. 194; *Gaynor v. Quinn*, 212 Pa. 362; *Miller's Estate*, 279 Pa. 30; *Kefover et ux. v. Potter Title and Trust Company*, 320 Pa. 51.

[3] Williston, The Parol Evidence Rules, Forbearance as Consideration, Penna. Bar Ass'n. Quarterly, December, 1930; Penna. Annotations to Restatement of the Law of Contracts, §76.

invalid claim . . . by one who has not an honest and reasonable belief in its possible validity" is not sufficient consideration: *Warren Tank Car Company v. Dodson,* 330 Pa. 281, 199 A. 139; *Falgiatore v. Falgiatore,* 378 Pa. 586, 107 A. 2d 864.

We are of the opinion that plaintiff did not entertain "an honest and reasonable belief" in the possible validity of the alleged claim forborne by him. A careful examination of the conversation between plaintiff and Mr. Gasparini on July 10, 1945, shows without question that it was only a preliminary inquiry regarding a possible contract to be made later. In this respect, plaintiff testified as follows: "Q. Did they [plaintiff and Gasparini] make any agreements as to how the property was to be mined at that time? A. For the moment, no. The understanding was that we were going to have the dragline come on the grounds first and then we were going to talk about the agreement.". And on cross-examination plaintiff testified: "Q. Now then, you told this court and jury that on that same day that there was no agreement made, that the agreement was that when the dragline was to go on, an agreement was to follow, isn't that true? . . . A. Certainly. . . . Q. So that on July 12th there was no agreement until the dragline went on, and there was no agreement in July, 1945? . . . A. No, sir. . . . Q. You told us that the agreement was to be made after the dragline got there, you admitted that twice? A. Certainly. He was going to ask me how much I want to strip this coal.". Plaintiff's testimony clearly shows that the parties intended only to enter into a binding agreement sometime in the future. In such a case, the preliminary negotiations do not constitute a contract: *Upsal Street Realty Company v. Rubin,* 326 Pa. 327, 192 A. 481; *Berkowitz v. Kass,* 351 Pa. 263, 40 A. 2d 691.

Furthermore, in order for there to be an enforceable contract, the nature and extent of its obligation must be certain; the parties themselves must agree upon the material and necessary details of the bargain: *Edgcomb v. Clough*, 275 Pa. 90, 118 A. 610; *Beachler v. Mellon-Stuart Company*, 354 Pa. 341, 47 A. 2d 147; *Potter v. Leitenberger Machine Company*, 166 Pa. Superior Ct. 31, 70 A. 2d 390. Here there was no agreement or even discussion as to any of the essential terms of the alleged bargain such as time or manner of performance, price to be paid, or the like. Under such circumstances it is quite apparent that the alleged contract was much too indefinite for plaintiff to reasonably believe he could ever enforce it in an action at law for damages. Proof that plaintiff was aware of this is found by the fact that in March, 1948 plaintiff wrote defendant a letter offering to sell his mine set-up for deep mining situated on part of the tract in question. Nowhere in this letter is any claim made for profits based on the alleged oral agreement of October, 1947. It is also of significance that plaintiff did not institute the present suit for a share of the profits until April 22, 1954.

Appellant contends that whether or not there was a contract between the parties as a result of the conversation in July of 1945, a promissory estoppel was created in that Gasparini promised to put the dragline on the land and in reliance on this promise plaintiff was led to inaction resulting in his losing his license to mine the coal in question. It is argued that from this a claim arose, forbearance from the assertion of which constituted consideration for appellee's promise in 1947 to share profits. This contention based on the doctrine of promissory estoppel not having been raised in or considered by the court below, is not reviewable here: *Lakewood Memorial Gardens, Inc. Appeal*, 381

Pa. 46, 50, 112 A. 2d 135; *Muse-Art Corporation v. Philadelphia,* 373 Pa. 329, 95 A. 2d 542; *McLaughlin et ux. v. Monaghan,* 290 Pa. 74, 138 A. 79. But in any event, we are satisfied that the elements essential to the establishment of a promissory estoppel were not present.

Appellant also contends that there was connivance between appellee and the owners of the tract to be mined and that there was tortious interference by appellee in the contractual relation between appellant and the owners which gave rise to a claim, the forbearance to assert which was sufficient consideration for appellee's alleged promise to share profits. But, as found by the court below, there was no evidence whatsoever to support a tortious interference upon which such a claim could be predicated.

We are satisfied that there was no claim forborne by appellant which constituted consideration for appellee's promise to share profits under the rule set forth in the section of the Restatement of the Law of Contracts referred to supra.

Judgment affirmed.