AGRISTOR CREDIT CORPORATION, a corporation, Appellant,

v.

Leslie J. UNRUH, Jim Browning, Clarence Stamm, Keith Pitzer, Albert Dudgeon and J. D. Browning, Appellees.

No. 49906.

Supreme Court of Oklahoma.

Nov. 8, 1977.

Rehearing Denied Dec. 21, 1977.

Donley & McMillin by Joe B. McMillin, Jr., Weatherford, for appellant.

Ivester, Ivester & Ivester by John E. T. Ivester, Sayre, Meacham, Meacham & Meacham, Clinton, for appellees.

DAVISON, Justice:

This case involves an action in the nature of interpleader in which the trial court was asked to determine whether a secured creditor or several feedmen claiming agister's liens were entitled to particular funds held by the Oklahoma Bank and Trust Company of Clinton, Oklahoma, who claim no interest in the money itself. The funds held by the Bank constituted part of the proceeds of a public sale of debtor's property, conducted by the secured creditor, Agristor Credit Corporation, who had a perfected security interest in all of the property sold at public auction.[1] At the time of the sale, the debt-

---

1. Under the terms of the security agreement between Agristor Credit Corporation and Mr. and Mrs. H. W. Pitzer, Agristor Credit Corporation had a security interest in the following

or, H. W. Pitzer and Oma June Pitzer, owed the Credit Corporation approximately $400,-000.00. The sale and related transactions *grossed* approximately $270,000.00. The funds being held by the Bank amounted to approximately $50,000.00 of the $270,000.00 realized at the sale.

At trial, the trial court found that:

" * * * Agristor Credit Corporation, a corporation, in working out the sale by agreement with the defendant, H. W. Pitzer [the debtor], was not enforcing the regular legal remedies and rights provided by the Security Agreement and by the Uniform Commercial Code of the State of Oklahoma and it was a mutually agreeable sale, and the action and conduct of the plaintiff and the things that they did, either expressly or impliedly, bound the plaintiff to a contract that the feed be paid out of the sale price of the property;

* * * * * *

The basis of the court's decision is on the basis of contract agreement and not on the basis of the enforcement of a lien; * * * "

Based on these findings, the trial court held that the feedmen were entitled to the funds held by the Bank.

▮ As appellant correctly points out in its arguments, appellant, secured creditor, was in fact enforcing its regular legal remedies under the Security Agreement in accordance with the provisions of the Uniform Commercial Code, as enacted in this State. Section 9–504 of Title 12A clearly gives a secured party the right to dispose of collateral after default. That Section provides in part:

listed collateral as security for all payments of all existing and future debts, obligations and liabilities of the Pitzers to the Credit Corporation. The instrument created a security interest in all of the Pitzers farm equipment and machinery including specifically listed tractors, swathers, choppers, crimpers, bunk feeders, forage wagons, cotton trailers, plowers, shredders, chisels, row cultivators, drills, generators, milk tanks, all milking and irrigation equipment, dump trucks, pickups, spreaders and automobiles.

"(1) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. Any sale of goods is subject to the Article on Sales (Article 2). The proceeds of disposition shall be applied in the order following to

(a) the reasonable expenses of retaking, holding, preparing for sale, selling the like and, to the extent provided for in the agreement and not prohibited by law, the reasonable attorneys' fee and legal expenses incurred by the secured party;

(b) the satisfaction of the indebtedness secured by the security interest under which the disposition is made;

(c) the satisfaction of indebtedness secured by any subordinate security interest in the collateral if written notification of demand therefor is received before distribution of the proceeds is completed. * * * " ·

In the case at hand, the secured creditor, Agristor Credit Corporation, peacefully took possession of the goods, and sold them at public sale. In taking possession of the secured property, it was not necessary that Agristor Credit Corporation take actual physical possession through judicial proceedings, as Section 9–503 of Title 12A specifically provides that such proceedings are not necessary. That Section provides in part:

"Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. * * * "

Additionally, a security interest was taken in all livestock, including almost 300 Holstein cows, 50 Holstein bred heifers, 89 Holstein heifers 6–10 months old, 126 Holstein and Angus and Holstein calves under 6 months old, 2 Holstein bulls, an Angus bull and 26 Holstein calves under 6 months old; all crops, grains and forages, all livestock, feed, harvested crops, farm supplies now owned and hereinafter acquired by the Pitzers, and certain other listed property. The security agreement also contained an after acquired property clause.

Thus, in selling the secured property, Agristor Credit Corporation was pursuing its remedies under the Uniform Commercial Code.

■ As mentioned above, the trial court's judgment in favor of the feedmen was not based upon a priority lien, but was based upon a contractual agreement. An examination of the record demonstrates that although there might have been an agreement between the secured creditor and the feedmen, such agreement did not rise to the dignity of a valid and enforceable contract. There is a great deal of conflict in the testimony as to whether such an agreement was ever reached between the parties. The only testimony upon which the court could have found that such an agreement was entered into, was the testimony of the debtor himself, who testified to acting as a go-between between the secured creditor and the feedmen. He testified that on the day of the sale, several of the feedmen appeared at the sale. When they were informed that they would not be paid out of the proceeds of the sale, they told the debtor that unless they were paid out of the proceeds, they would disrupt the auction, by announcing to all those gathered that they had a lien on the property being sold. The debtor then testified that when he informed the secured creditor's agent of this fact, the agent stated that the feedmen's interference would have a disastrous effect upon the sale, and because of that, agreed to pay the feedmen out of the proceeds. All this of course is according to the testimony of the debtor himself. The testimony of the secured party's agent was that the only concession he made was that he would not sell any of the feed still on hand. Such feed, incidently, was not offered for sale.

The feedmen argue that the agreement, assuming, as the trial court must have that it was made, was valid and enforceable as their forbearance from interrupting the sale constituted sufficient consideration. We do not agree. The feedmen's forbearance from interfering with the auction does not constitute consideration, for the feedmen had no legal right to interfere with the sale, as the sale was being conducted in a commercially reasonable manner, and their interest in the collateral, was clearly subordinate to that of the secured creditor.

■ The secured interest of Agristor Credit Corporation was perfected by filing in March of 1975. None of the agister liens came into existence until August of that year, nearly six months after the perfection of Agristor's security interest in the collateral. Under the law in Oklahoma, valid recorded chattel mortgages take precedence over subsequently acquired agister liens. E. g., *Leger Mill Co. v. Kleen-Leen, Inc.*, Okl., 563 P.2d 132 (1977); and *National Bank of Commerce v. McDaniel*, 71 Okl. 6, 174 P. 286 (1918). As the feedmen are deemed to have constructive knowledge of the filing of the Credit Corporation's security interest, it can hardly be argued that the feedmen had even a questionable right to interfere with the sale. This being the case, their forbearance did not constitute consideration, for the rule is well settled in this jurisdiction that the forbearance of a right cannot constitute the consideration for the making of a contract unless the forbearing party has a reasonable belief that he or she has, at least, a questionable right to act rather than forbear. E. g., *State ex rel. Marland v. Phillips Petroleum Co.*, 189 Okl. 629, 118 P.2d 621 (1941); and *Duck v. Antle*, 5 Okl. 152, 47 P. 1056 (1897). Also see *Falgiatore v. Falgiatore*, 378 Pa. 586, 107 A.2d 864, 865 (1954), in which the Pennsylvania Court stated:

> "Plaintiff contends that his 'promise to forbear from the exercise of a right is sufficient consideration to support' the contract. But the 'forbearance to assert an invalid claim * * * by one who has not an honest and reasonable belief in its possible validity' is not sufficient consideration: Restatement, Contracts, § 76(b); *Warren Tank Car Co. v. Dodson*, 330 Pa. 281, 285, 199 A. 139. Plaintiff could not have had neither an 'honest' nor a 'reasonable' belief of the 'validity' of the contract."

■ I Williston on Contracts (3d) at § 135B, characterizes the above stated legal

principle as follows: " \* \* \* the claim forborne must be reasonably doubtful *in fact or in law.*" [Emphasis added] Professor Williston also states the following: "If the law here, as generally, imposes the standard of reasonableness and regards it as improper though not actionable to attempt the enforcement of an obviously unreasonable or frivolous claim, irrespective of the claimant's good faith, surrender of such a claim will not be sufficient consideration." [Williston on Contracts § 135B]. In the case before us, the claim forborne by the feedmen was neither reasonably doubtful in fact or in law. Agristor Credit Corporation's security interest was clearly prior to that of the feedmen's liens, and the feedmen had constructive notice of the Credit Corporation's security interest—there was thus no honest or reasonable doubt as to the facts. Secondly, there was no reasonable doubt as to the state of the law, as valid recorded chattel mortgages take priority over subsequently acquired agister's liens, except in extraordinary circumstances, none of which are even suggested here.

Accordingly, the feedmen had no right to disrupt the sale, and, given their constructive knowledge of the UCC filings, could not have reasonably believed that they had a right to disrupt the sale. Thus, their forbearance did not constitute consideration. This being the case, the alleged contract between the Credit Corporation and the feedmen, assuming an agreement ever existed, would not be a valid and enforceable contract. We must therefore reverse the holding of the trial court, which was based on the formation of a valid and enforceable contract. As an enforceable contract did not exist, and as the Credit Corporation clearly had priority in the collateral, and therefore had a right to the proceeds of the sale, we reverse the ruling of the trial court, and hold that the Credit Corporation is entitled to the funds now in the hands of the interpleader, Oklahoma Bank and Trust Corporation of Clinton, Oklahoma. As the issues discussed above are dispositive of the case before us, we deem it unnecessary to discuss other issues raised on appeal.

REVERSED.

HODGES, C. J., LAVENDER, V. C. J., and BERRY, BARNES, SIMMS and DOOLIN, JJ., concur.

WILLIAMS and IRWIN, JJ., dissent.