**NORTH AMERICAN PROPERTIES, LIMITED, Plaintiff,**

v.

**POCONO FARMS LOT OWNERS ASSOCIATION a/k/a Community Association of Pocono Farms, Inc., and Smoke Ridge Village, Inc., Defendants.**

Civ. No. 78–656.

United States District Court,
M. D. Pennsylvania,
Third Circuit.

Jan. 15, 1980.

Joseph A. O'Brien, Oliver, Price & Rhodes, Scranton, Pa., M. Patricia Becket, Philadelphia, Pa., (on appeal only), for plaintiff.

C. Daniel Higgins, Stroudsburg, Pa., for defendants.

**MEMORANDUM AND ORDER**

NEALON, Chief Judge.

### I. THE FACTS

This case comes before the Court on a defense motion for summary judgment. The plaintiff, North American Properties, Limited ("North American"),[1] possesses title to Pocono Farms North, a housing development in Coolbaugh Township, Monroe County, Pennsylvania. The defendant, Pocono Farms Lot Owners Association, holds a mortgage on this property. The instant lawsuit concerns the validity of the encumbrance. According to the plaintiff, the mortgage is void because its execution exceeded the corporate powers of Smoke Ridge Village, Inc., the original mortgagor. Upon review of all the arguments offered by North American, however, the Court concludes that the Association's encumbrance is legally sound. Therefore, the defendant's motion for summary judgment shall be granted.

Due to the complicated history of this litigation, a detailed review of the facts is necessary. During the late 1960's and early 1970's, two individuals named John McGregor and Patricia Faitz financed the development of three residential areas in Coolbaugh Township: Pocono Farms ("Farms"), Pocono Farms East ("East"), and Pocono Farms North ("North," also known as "Smoke Ridge Village"). Each section was sponsored by a separate corporation under the control of McGregor and Faitz.[2] The most progress occurred at Farms which was owned and operated by Recra-Del Corporation. Ownership and control of North, meanwhile, came under the auspices of Smoke Ridge Village, Inc.[3] and of East in Pocono Carriage Estates, Inc.

The Association is a non-profit organization which represents the interests of per-

---

1. The plaintiff is a New Jersey corporation. Jurisdiction in this case is based on diversity of citizenship. 28 U.S.C. § 1332.

2. The Record is not clear if McGregor and Faitz still dominate these corporations.

3. According to the plaintiff, Pocono Farms North was divided into five tracts, two of which were owned by Recra-Del. The significance of this assertion, which is critical to North American's case, shall be discussed in a later portion this Memorandum.

sons who purchased lots at Farms from Recra-Del. As more individuals bought property in the latter subdivision, relations between the landowners and developers began to degenerate. Basically, members of the Association felt they had two sets of grievances against the McGregor corporations. First, they charged Recra-Del with failure to fulfill a number of promises which had been made as inducements to buy lots in Farms. These pledges included: (1) conveyance of Glacier Lake and certain other property to the Association, (2) completion of various road and utility improvements for the locale, and (3) existence of an eighteen-hole golf course and other designated pastime amenities.[4] Second, the landowners complained that the McGregor corporations were advertising to the public that purchasers of property at North and East would be allowed to use recreational facilities to which only lot holders in Farms enjoyed a legal right of access.[5] Ultimately, negotiation proved fruitless.

In January 1974, the Association joined with two individual landowners in a suit against Recra-Del, Pocono Carriage Estates, and Smoke Ridge Village brought in the Monroe County Court of Common Pleas. The plaintiffs in that case sought a wide range of remedies including: specific performance of the promises to convey real estate, consummation of the recreational, utility, and road improvements, and an injunction prohibiting any future advertising which suggested that lot holders in any development other than Farms would have the right to use Glacier Lake without the Association's consent. After preliminary legal maneuvers, the case settled.[6]

The final terms of the agreement, which the parties signed on September 17, 1974, were favorable to the Association. Two of the provisions are of special importance to the instant litigation. Initially, it should be noted that as security for Recra-Del's completion of the road, utility, and recreational improvements, the McGregor corporations consented to execute a mortgage in favor of the Association on all unsold property in Farms and North. A second critical mandate gave Recra-Del, Smoke Ridge Village, and Pocono Carriage Estates the right to advertise that purchasers of their lots would have the right to use the facilities at Glacier Lake until September 13, 1979, at which time only owners of land within Farms would enjoy the privilege.[7] The agreement was modified by two subsequent covenants signed on January 10, 1976, neither of which concerned issues material to the present litigation.[8]

The McGregor corporations did not fare well financially during the months that followed the Monroe County settlement, and their properties eventually passed to other owners. VEP Associates, an engineering firm, had carried out a number of services for Smoke Ridge Village during 1974–1975.[9] The latter corporation, however, never fully paid its debts for this work. Ultimately, the engineering company sought satisfac-

---

4. See Counts I, II and IV of the "Complaint" dated January 1974 and attached to Document 26 of the Record. See also the Deposition of Kevin Austin, Document 16 of the Record at 5 and the Deposition of Robert C. Gardner, Document 22 of the Record at 5.

5. See Count III of the "Complaint" dated January 1974 and appended to Document 26 of the Record. See also the Deposition of Robert C. Gardner, Document 22 of the Record at 6–7.

6. See the "Original Agreement" attached to Document 26 of the Record.

7. The mortgage and Glacier Lake settlement terms may be found at subsections 5(a) and 1 of id., respectively.

8. In the instant action, North American claims the fact that Smoke Ridge Village did not join in either of the modifying agreements is significant. The Court disagrees. Neither of the later covenants concerned terms which required Smoke Ridge Village's consent. Therefore, absence of the corporation's signature is understandable. Both of the subsequent agreements are appended to Document 26 of the Record.

9. Val Manov, a New Jersey resident, owns 100 percent of the stock in both VEP and North American. Also, except for his spouse, he holds all the offices and directorships in both corporations. See the Deposition of Val Manov, Document 23 of the Record at 4–11.

tion in court and foreclosed on the developers' North holdings.[10]

VEP assigned its interests to the former Smoke Ridge Village real estate to North American for what appears to have been nominal consideration.[11] Once in control of the property, the new owner confronted various encumbrances on the development. United Penn Bank brought an action based on a separate mortgage it held on the property and the Record indicates that the suit is still pending.[12] As has been noted, the instant litigation is an attempt to remove the Association's encumbrance on the land.

## II. THE PLAINTIFF'S ARGUMENT

North American's original complaint involved three counts. The first alleged that the Association's mortgage contained the following defects: (1) lack of consideration, (2) illegal restraint on alienation, (3) improper corporate authorization, (4) non-existence of a crucial collateral agreement, (5) a guarantee of another's obligation without express charter authority, (6) no mutuality of obligation, (7) vagueness and imprecision, and (8) violation of the Statute of Frauds. Second, the plaintiff asserted that any mortgage rights held by the Association had been fully satisfied. A third count sought an order permanently barring Smoke Ridge Village, which originally was also a defendant, "from asserting any right, lien, title or interest in the aforesaid property." This latter issue was decided on January 12, 1979 when the Court entered a default judgment on the question in favor of the plaintiff. *See* Document 12 of the Record. Significantly, North American has abandoned most of its charges in the face of the summary judgment motion. The plaintiff now contends that only four substantial questions of fact remain unresolved.

10. *See id.* at 11–19 for details.

11. In the words of Mr. Manov, "The consideration for that transfer is that North American will pay all unpaid fees to VEP Associates." *See id.* at 20.

12. *Id.* at 21–23.

13. The relevant section of 15 P.S. § 1303(A) reads:

## A. Was the Mortgage in Favor of the Association Invalid as Ultra Vires to the Powers of Smoke Ridge Village?

The allegation of ultra vires permeates North American's contentions. Indeed, the doctrine is so central to the plaintiff's case that the defendants' motion for summary judgment must be granted if the theory does not apply. At oral argument, the Association maintained that the ultra vires rule is moribund in Pennsylvania. Counsel for North American responded that while the bulk of the concept has been repealed by statute, a surviving remnant controls this case.

Both parties agree that 15 P.S. § 1303(A) of the Commonwealth's Business Corporation Law eliminates the defense of ultra vires with regard to any transaction that can be classified as a "contract," "right of property," or "liability."[13] North American, nevertheless, claims that the Smoke Ridge Village mortgage actually falls within the jurisdiction of 15 P.S. § 1303(B) which provides that:

No conveyance or transfer by or to a corporation of *property, real or personal*, of any kind or description, shall be invalid or fail because in making such conveyance or transfer, or in acquiring the property, real or personal, the board of directors or any of the officers of the corporation, *acting within the scope of the actual or apparent authority given to them by the board of directors*, have exceeded any of the corporation's purposes or powers. [emphasis added]

The plaintiff argues that the second subsection is narrower than the first in a very important respect. According to North

No limitation upon the business, purpose or purposes, or powers of a business corporation, expressed or implied in its articles or implied by law, shall be asserted in order to defend any action at law or in equity between the corporation and a third person, or between a shareholder and a third person, involving any contract to which the corporation is a party or any right of property or any alleged liability of whatsoever nature . . .

American, § 1303(B) does not abolish the ultra vires rule with regard to any action defined as a "conveyance or transfer" of "property, real or personal" unless the grant is ratified by the board of directors or carried out by corporate officers within the scope of their actual or apparent authority.

The plaintiff's version of the facts and its legal conclusions are tailored to suit this interpretation of § 1303(B). North American insists that execution of the Pocono Farms North mortgage in favor of the Association constituted not a contract but a conveyance of personal property.[14] There is no indication in the Record that the Smoke Ridge Village Board of Directors ever authorized the transaction. Furthermore, the plaintiff asserts that the existence of actual or apparent authority remains an open question. Therefore, North American concludes that the ultra vires defense cannot be foreclosed for the purpose of deciding the summary judgment motion.

After reasoning that the scope of corporate powers concept is relevant, counsel for the plaintiff asserts that two jury issues remain which, if decided favorably, could support a verdict for his client: (1) the absence of adequate consideration for the mortgage and (2) the possibility that the transaction violated 15 P.S. § 1302(8) by issuing an encumbrance on the corporation's property which neither guaranteed a valid obligation of Smoke Ridge Village nor received money or property in return. North American claims that the ultra vires defense cannot be discarded until these questions are resolved at trial.

### B. Other Points of Contention

The plaintiff offers three more issues of fact which supposedly preclude the Court from granting the defendants' motion for summary judgment. North American initially notes that 15 P.S. § 1305 states:

. . . Any form of execution provided in the by-laws to the contrary notwithstanding, any note, mortgage, evidence of indebtedness, contract, or other instrument of writing, or any assignment or endorsement thereof, executed or entered into between any corporation and any other person, copartnership, association or corporation, when signed by the president or vice president and secretary or assistant secretary or treasurer or assistant treasurer of such corporation, shall be held to have been properly executed for and in behalf of the corporation. . . .

The format of the Smoke Ridge Village mortgage complied with the requirements of this provision. In *Carrier v. William Penn Broadcasting Company*, 426 Pa. 427, 233 A.2d 519 (1967), nonetheless, the Pennsylvania Supreme Court recognized that an exception to the statute exists when the other contracting party has notice that the transaction is fraudulent, ultra vires, or an abuse of the officers' discretion. According to the plaintiff, the Record does not preclude the possibility that concerning the latter two categories the Association had the notice necessary to trigger the *Carrier* rule and render § 1305 non-dispositive.

A second contention hinges on 39 P.S. § 355 which establishes that

[e]very conveyance made without fair consideration, when the person making it is engaged, or is about to engage, in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors, and as to other persons who become creditors during the continuance of such business or transaction, without regard to his actual intent.

Citing this provision North American reaffirms its assertion that: (1) Smoke Ridge Village's execution of the Pocono Farms North mortgage amounted to a conveyance and (2) the mortgagor did not receive adequate consideration. Thus, the plaintiff concludes that a substantial question of fact exists as to whether the transaction violated § 355.

---

14. The plaintiff has always maintained that execution of the mortgage amounted to a transfer of property. The specific characterization of the transfer as one of personal property, however, was first made on oral argument.

Finally, North American attempts to distinguish this case from the normal operation of the estoppel by deed doctrine. The latter rule normally prohibits a party or privy to a mortgage or other land transaction from asserting a claim in derogation of the terms contained in the underlying agreement.[15] The plaintiff, nevertheless, again resorts to its characterization of the Pocono Farms North encumbrance as an ultra vires act. The Court is urged to discard the estoppel doctrine on the grounds that execution of the mortgage exceeded the scope of Smoke Ridge Village's corporate powers and, therefore, should not bind the present landowner.

### III.  ANALYSIS OF PLAINTIFF'S ARGUMENT

#### A.  The Ultra Vires Claim

■ North American cannot prevail on the merits of this contention until it first establishes a right to invoke the issue. In *Hazelwood Brewing Co. v. Siebert*, 256 Pa. 9, 11, 100 A. 493, 493–494 (1917), the Pennsylvania Supreme Court concluded the following:

> .  .  .  The plea of ultra vires is not to be interposed by a stranger  .  .  .  . [T]he stockholders, the state, and in some instances the *creditors*, are the parties entitled to raise the issue, and not a stranger to the transaction. [emphasis added] [16]

As has been noted, VEP was once a creditor of Smoke Ridge Village. For the purpose of deciding this motion, it shall be assumed that the debt antedated the Monroe County settlement which required issuance of the Pocono Farms North mortgage. Furthermore, there is authority for the proposition that the plaintiff, an assignee, may take advantage of the creditor status of its

predecessor.  *Fowler v. Scully*, 72 Pa. 456, 466 (1872). Accordingly, the Court shall proceed to the merits.

■ As has been explained, North American insists that § 1303(B) governs this case because execution of the challenged encumbrance constituted a conveyance of personal property rather than a contract. Pennsylvania law treats a mortgage as personalty with regard to *third persons*. *Gallagher v. Rogan*, 322 Pa. 315, 318 (1936); *McGlathery's Estate*, 311 Pa. 351, 354–55, 166 A. 886 (1933); *Consumers Time Credit, Inc. v. Remark Corporation*, 248 F.Supp. 158, 162 (E.D.Pa.1965); *Equitable Trust Co. v. Schwebel*, 40 F.Supp. 112, 113 (E.D.Pa. 1941).[17] Under this reasoning, § 1303(B) would apply if, hypothetically, Smoke Ridge Village had assigned rights it held as mortgagee to unrelated property. In the instant action, however, the plaintiff does not question the validity of the mortgage from the perspective of a third party. On the contrary, North American attacks the transaction between mortgagor and mortgagee. According to *Beaver County Building and Loan Association v. Winowich*, 323 Pa. 483, 489, 187 A. 481, 484 (1936):

> The theory in our state has always been that a mortgage is merely collateral for the payment of some primary obligation  .  .  .  . *As between the parties, both at law and in equity, it is a conveyance only so far as necessary to render the instrument effective as a security.* .  .  .  [emphasis added]

*See also Eldredge v. Eldredge*, 128 Pa.Super. 284, 291, 194 A.2d 306 (1937). The plaintiff has provided no authority for the proposition that a mortgage in this context is a conveyance for the purposes of § 1303(B).

---

15.  *See, for example, Eisenbrown v. Burns*, 30 Pa.Super. 46, 48–49 (1906). *See also* 14 P.L.E. *Estoppel* §§ 3, 5 (1959).

16.  This holding preceded passage of § 1303 and thus is controlling if North American is correct in suggesting that the ultra vires doctrine is applicable to the instant litigation.

17.  The Court of Appeals for the the Third Circuit has stated that "mortgages generally have been held to be personalty in Pennsylvania." *In re Bristol Associates, Inc.*, 505 F.2d 1056, 1059–60 n. 4 (3d Cir. 1974). Significantly, all of the cases cited for this proposition, *viz.*, *Gallagher*, *McGlathery*, and *Equitable Trust*, concerned the third-party situation.

The entire circumstances of the Pocono Farms North encumbrance must be viewed in totality before the transaction can be classified. The mortgage, which was signed on May 9, 1975, has little significance standing alone. Indeed, it ends with the frank admission that "the within instrument is given for the sole purpose of securing the performance by Mortgagors of the terms and conditions more fully set forth in Paragraph 4 of [the Settlement Agreement in the Monroe County litigation] . . ."[18] Furthermore, as has already been explained, in executing the encumbrance Smoke Ridge Village was simply fulfilling its obligation under subsection 5(a) of the covenant which terminated the 1974 suit between the Association and the McGregor corporations. For these reasons, execution of the mortgage on Pocono Farms North should be considered an integral part of the overall contractual arrangement. Significantly, the Supreme Court of Pennsylvania has ruled that such mortgages which provide the mortgagee with added security on a collateral obligation are themselves contracts and thus merit the constitutional protections that enforceable promises deserve. *Philadelphia Trust Company v. Northumberland County Traction Company*, 258 Pa. 152, 165, 101 A. 970 (1917). *See also Beaver County Building and Loan Association v. Winowich*, 323 Pa. at 492, 187 A. 481; *Breitenbach v. Bush*, 44 Pa. 313, 320 (1863).

Thus it can be seen that in attacking the mortgage on Pocono Farms North, the plaintiff is actually attempting to raise the ultra vires claim against a provision of the Monroe County settlement agreement. Acceptance of North American's argument would lead to effective negation of § 1303(A) by permitting piecemeal assertion of the ultra vires contention against the individual terms of a contract. Assume, for example, that a corporation enters a contractual arrangement in which it pledges to transfer land, money, or some other form of property to the promisee. Under the logic of the plaintiff's position, an aggrieved creditor could classify the corporation's obligation under the covenant as a conveyance and interpose the ultra vires defense. Such a result would clearly flout both § 1303(A) and its interpreting cases.[19] It would also subject virtually every corporate contract to the possibility of an ultra vires challenge. This type of a consequence cannot be accepted. Accordingly, it is concluded that when execution of a mortgage is required by the terms of a collateral contract, the encumbrance cannot be nullified under § 1303(B) on the grounds that its execution exceeded the scope of corporate authority or power. 15 P.S. § 1303(A). In the instant action, North American's ultra vires theory is rejected.[20]

The Court, moreover, disagrees with the plaintiff's conclusion that Smoke Ridge Village did not receive adequate consideration for its consent to the Monroe County settlement. The Record clearly indicates that the Agreement terminating the 1974 litigation gave the owner of Pocono Farms North the right to advertise to the public that purchasers of its lots would have access to Glacier Lake until September 13, 1979.[21] This concession is itself enough to support the agreement. In *Merwarth v. Townsend*, 455 Pa. 475, 479, 317 A.2d 275, 277 (1974), the Supreme Court of Pennsylvania unanimously held that "waiver of a valid defense to a sheriff's sale was certainly more than

---

18. *See* Exhibit A attached to Document 1 of the Record.

19. *Strauss v. W. H. Strauss & Co., Inc.*, 330 Pa. 517, 520, 199 A. 195 (1938); *Brogan v. Bright-Brooks Lumber Company*, 138 Pa.Super. 409, 414, 11 A.2d 205 (1939). *See also American Mutual Liability Insurance Company v. Bollinger Corporation*, 402 F.Supp. 1179, 1186 (W.D. Pa.1975). ("A corporation can no longer use the defense of ultra vires to withdraw itself from an act it has already performed.")

20. It should be noted that there is also some authority for the proposition that even § 1303(B) "precludes the plea of ultra vires to invalidate a conveyance of property by a corporation because the officers or directors exceeded any of the corporation's purposes or powers." 8A P.L.E., *Corporations* § 364.

21. *See* the second paragraph in subsection 1 of the "Original Agreement" appended to Document 26 of the Record.

sufficient consideration" to bind a party to a covenant which terminates litigation. Following this reasoning, the Association's grant of a substantial commercial right to Smoke Ridge Village should also satisfy the *quid pro quo* requirement. Further judicial scrutiny of the issue is inappropriate as courts generally will not pass upon the relative value of the consideration given by each side. *Harnett v. Ryan Homes, Inc.*, 360 F.Supp. 878, 890 (W.D.Pa.1973), *aff'd*, 496 F.2d 832 (3rd Cir. 1974).[22]

■ North American contends that on the basis of the present Record "the jury would clearly be entitled to conclude that the defendants herein did not have any reasonable basis to believe that they had a valid claim against Smoke Ridge Village, Inc." [23] The plaintiff maintains that if such is the case the Monroe County Settlement Agreement must be void for lack of consideration. Several precedents are offered for this proposition: *Lombardo v. Gasparini Excavating Co.*, 385 Pa. 388, 391–92, 123 A.2d 663 (1956); *Falgiatore v. Falgiatore*, 378 Pa. 586, 590, 107 A.2d 864 (1954); *Warren Tank Car Company v. Dodson*, 330 Pa. 281, 284–85, 199 A. 139 (1938); *Crown v. Cole*, 211 Pa.Super. 388, 392–93, 236 A.2d 532 (1967).

This argument, however, misses the real issue. North American's authorities all involved instances in which the promisor received no benefit from the transaction other than the promisee's pledge not to press a legal claim. In such an instance, a judicial decision that the withholding of the suit was insincere, and thus an inadequate form of consideration, may preclude existence of a binding contract. This case, however,

presents a situation in which Smoke Ridge Village received an additional *quid pro quo* : the Glacier Lake advertising rights. As has been stated, this latter benefit to the mortgagor would suffice independently as the consideration necessary to cement the Monroe County settlement agreement. Therefore, there is no need to inquire whether the Association's decision to end its case was a sufficient concession to create a contract.

Furthermore, the plaintiff's position on this point would be unpersuasive even if the Court did feel compelled to review the defendants' motives in bringing the original litigation. North American insists that Recra-Del, not Smoke Ridge Village, was responsible for any violation of Association rights which occurred from the sale of property at North.[24] According to the plaintiff, Robert C. Gardner's [25] testimony admits that Smoke Ridge Village was joined as a defendant simply because it represented an attractive source of cash in the event that the Monroe County case ended favorably. On this basis, North American states that the Association never had a *bona fide* claim against the original mortgagor. After giving careful attention to the depositions of Messrs. Gardner and Austin,[26] the Court finds no material doubt as to the sincerity of the lot owners' allegations raised in 1974.

The Record makes two things very clear concerning the reasons for initiation of the Monroe County suit. First and most importantly, the Association leadership did not view any particular corporation responsible for their difficulties. Rather, they considered the individual developers the main culprits. Interestingly, neither Mr. Gardner nor Mr. Austin remembered for certain

---

22. North American has never contended that the Monroe County court settlement terms did not give Smoke Ridge Village the Glacier Lake advertising rights or that the mortgagor had these privileges before the case terminated.

23. *See* Plaintiff's Brief at 9, Document 27 of the Record.

24. North American asserts that it is a "matter of record" that Pocono Farms North was divided into five sections: A, B, C, D, and E. The plaintiff also states that Recra-Del owned portions A and B, the only areas from which lots

had been sold, at the initiation of the Monroe County suit. North American concludes that since Smoke Ridge Village had yet to sell any lots, it could not have violated any of the defendants' rights.

25. Mr. Gardner is a former president of the Association.

26. At the taking of his deposition on January 25, 1979, Mr. Austin was a vice-president of the Association.

whether Smoke Ridge Village and Recra-Del had separate corporate identities.[27] Indeed, when asked why the Pocono Farms landowners joined the former as a defendant, Mr. Gardner answered:

Well, our claim—I have to go back to John McGregor. Mr. McGregor has the ability to set up smoke screens of corporations that none of us that were not lawyers could see through. All we knew was that John McGregor was the man that was doing that, not doing this and doing this. We had to go to him the best way we knew how.[28]

Second, even though members of the Association recognized that Smoke Ridge Village would be a solvent defendant, they also felt that it was involved in the developer's misconduct. Mr. Austin, for example, stated that he and other residents of Pocono Farms suspected that a portion of their payments to Recra-Del had been used to fund Smoke Ridge Village projects rather than to complete the road, utility, and recreational improvements owed the Association.[29] Mr. Gardner, moreover, gave the following answers when questioned by North American's counsel:

Q. When I questioned you before you testified that there were two reasons for bringing suit by the Association, correct?

A. I believe so.

Q. And is it correct that the first reason was to stop Recra-Del, Pocono Carriage Estates and Smoke Ridge Village, Inc., from selling lots granting to their purchasers the right to use the amenities of Pocono Farms?

A. To stop that sale unless we were given some guarantee of the completion of the work at Pocono Farms.

Q. So the underlying reason was to get your work done?

A. Oh, yes, we were not out to stop somebody from doing business, but we had to get our work completed.

Q. Is it true that the same reason for bringing the suits was to seek a source of funds that could be used to complete Pocono Farms?

A. If—if you call that a second reason. To me it was all part of one reason, but I'll agree in a sense.

Q. Why was Smoke Ridge Village, Inc. a source of funds that could be used to complete the work at Pocono Farms?

A. Because it was the last tract of any substance that the developer had available to sell, and it was the same group of people doing the selling that had not furnished the work in our place. It just seemed like a logical association.

Q. And by the developer, you mean McClusky and Faitz?

A. McGregor.

Q. Or McGregor and Faitz? I'm sorry.

A. Yes.[30]

The beginning of this colloquy negates North American's contention that Mr. Gardner admitted to the Association's lack of a valid claim against Smoke Ridge Village. Clearly, the former president indicated that the landowners knew they had the legal right to prevent Smoke Ridge Village from advertising that future buyers would be able to use Glacier Lake and other amenities at Pocono Farms. That the Association was willing to barter this right for completion of the improvements owed their development does not undermine the validity of their claims.

In light of such uncontradicted evidence, the Court concludes that the defendants in this case filed the 1974 Monroe County suit

---

27. See the Deposition of Robert C. Gardner, Document 22 of the Record at 14 and the Deposition of Kevin Austin, Document 16 of the Record at 7.

28. See the Deposition of Robert C. Gardner, Document 22 of the Record at 15. In legal terms, Mr. Gardner might be seen to express a

desire to "pierce the corporate veil." See also the Deposition of Kevin Austin, Document 16 of the Record at 25–27.

29. Id. at 6–8.

30. See the Deposition of Robert C. Gardner, Document 22 of the Record at 24–25.

with a reasonable belief that the claim was valid. The Record supports no other inference.

This Memorandum offers no opinion concerning the merits of North American's contention that a sound cause of action never existed against Smoke Ridge Village. One can only speculate how well the McGregor corporations would have fared had they relied on that argument in 1974. As between the Association and Smoke Ridge Village, nevertheless, the Monroe County Settlement is as conclusive as the entry of a judgment. *Sustrick v. Jones & Laughlin Steel Corporation*, 413 Pa. 324, 326–27, 197 A.2d 44 (1964). The plaintiff, which insists that it has standing to assert Smoke Ridge Village's position, shall not be permitted to relitigate a suit which was terminated more than five years ago.

To summarize this section of the decision, the Court rejects North American's ultra vires theory. Since 15 P.S. § 1303(A) governed execution of the Pocono Farms North mortgage, the scope of corporate authority is an irrelevant issue. Also, no violation is found even after application of the ultra vires analysis.[31]

### B. North American's Remaining Contentions

The plaintiff's arguments are so interwoven that resolution of the ultra vires issue with its corollary question of adequate consideration disposes of North American's entire position. As as been explained, both 15 P.S. § 1305 and the doctrine of estoppel by deed would normally prevent the plaintiff from questioning the Smoke Ridge Village encumbrance. The rejection of ultra vires, the only claim offered to prevent application of these principles, indicates that their operation is indeed appropriate in this case. Furthermore, the plaintiff's proposal that the Pocono Farms North mortgage may have constituted a fraudulent conveyance under 39 P.S. § 355 can also be resolved without further litigation, because it rests on the inadequate consideration contention.

## IV. CONCLUSION

Upon review of the Record and arguments of counsel, the Court finds that after "all inferences, doubts and issues of credibility" are resolved against the Association, "no material issue of fact has still to be resolved." *Smith v. Pittsburgh Gage and Supply Company*, 464 F.2d 870, 874–75 (3rd Cir. 1972). The controlling legal issues, moreover, have been decided. Further proceedings would serve no purpose. Therefore, the defendants' motion for summary judgment shall be granted in accordance with Federal Rule of Civil Procedure 56.

---

**31.** North American offered two reasons for the conclusion that the Pocono Farms North encumbrance transgressed Smoke Ridge Village's corporate authority. The first, lack of consideration, has been analyzed. The second, an alleged violation of 15 P.S. § 1302(8), assumes absence of a valid *quid pro quo*. Thus, an unfavorable finding on the first logically precludes the second.